ROBERT W. HUFF, Plaintiff-Appellee, v. CONDELL MEMORIAL HOSPITAL et al., Defendants—(CHARLES U. CULMER, M.D., Defendant-Appellant.)

(No. 70-89; 

Second District—March 20, 1972.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Wm. D. Maddux and John M. O'Connor, Jr., of counsel,) for appellant.

Jerome H. Torshen and Philip E. Howard, both of Chicago, for appellee.

Mr. JUSTICE COONEY delivered the opinion of the court:

Defendant, Charles U. Culmer, M.D., appeals from judgment entered against him on jury's verdict of $50,000. The jury returned a verdict in favor of two other defendants.

The complaint alleges that negligence and malpractice by Defendant Culmer aggravated plaintiff's injuries sustained in an accident which caused him to be hospitalized at Condell Memorial Hospital. Dr. Culmer was the attending physician.

Appellant assigns as error first the trial court's refusal to direct a verdict for defendant or enter judgment notwithstanding the verdict.

The facts of the accident are not in dispute.

The plaintiff on July 15, 1964, in diving hit the bottom experiencing pain. He was pulled from the water and taken to the beach having then no feeling and being completely paralyzed. He was placed on a stretcher, put in an ambulance and taken to Condell Memorial Hospital. On the way he suddenly regained feeling in both legs and his left arm. On arriving at the hospital he had severe pain in his neck and right arm, being able to move his right arm very little and his right hand somewhat. There was no evidence of injury to the head and there had been no loss of consciousness.

Dr. Culmer first saw plaintiff the evening of July 15. He examined plaintiff in his hospital bed and found: plaintiff complained of neck pain; was able to move lower and left upper extremities; no paralysis; normal pupils; abrasions on right forearm; heart normal; lungs clear; some splinting of the abdomen. As to the right arm Dr. Culmer found difficulty in moving it, weakened wrist, decreased motions of fingers and thumb, and no gross loss of sensation.

Dr. Culmer then examined x-rays taken of plaintiff, AP and lateral views. The AP view showed the 6th and 7th cervical vertebrae from which Dr. Culmer saw no fractures. The lateral views did not show C6 or C7. The following morning he talked with Dr. Audrey Wilson, the radiologist for Condell Hospital. She told defendant they were normal looking x-rays, and she testified that the films were adequate for a diagnosis of the area they showed, that they did not show the lateral 6th and 7th cervical vertebrae and were not adequate to make a diagnosis of them. She also stated that additional lateral x-rays were not taken on the 15th to show C6 and C7 because the technician was not going to jeopardize plaintiff at that time, since he had been paraplegic. Dr. Culmer's working diagnosis included a possible fracture of some vertebrae. He ordered absolute bed rest, small pad beneath the neck and sandbags to the sides of the head.

Dr. Culmer testified he was reluctant to order additional x-rays due

to plaintiff's condition, for fear of causing motion of the cervical spine and ultimate damage to either the spinal cord or the roots, in addition to the problem of paralytic ileus.

Whereas plaintiff could not move his right hand, finger and arm on the 15th, the following day he could do so slightly. On the 17th because of plaintiff vomiting Dr. Culmer ordered plaintiff may be turned freely, however, he complained of pain in his neck and right arm when moved. On the same day the nurses sat plaintiff twice in an upright position but not on Dr. Culmer's orders. On the 19th he ordered "Ambulate". Plaintiff that day stood up with much help, he became very dizzy, was taken to the toilet several times and went for a walk three times. On the 20th he walked with assistance three times. Plaintiff, however, testified that he walked many more times than the record showed.

On the 21st and 23rd additional x-rays were taken, those of the 21st revealing comminuted fracture of the right lamina of C6, and those of the 23rd a linear fracture of the body of C6. Ambulation was stopped on the 21st.

Dr. E. William Immerman, orthopedic surgeon, was called by plaintiff. He had x-rays taken and carried out an orthopedic, neurological examination of plaintiff. He was given a comprehensive statement of hypothetical facts and gave a number of opinions based thereon and upon a reasonable degree of medical certainty.

On cross-examination by counsel for one of the other defendants he testified that it was his opinion that the severe injury, the fractures that existed were aggravated or produced additional findings after plaintiff was ambulatory. He stated that the entire condition which he found in plaintiff's left leg, was initiated by ambulation, although he could not give any opinion in specific degrees. Dr. Immerman also testified that the findings in the hypothetical question with reference to plaintiff's left leg would have had their onset on July 19, due to ambulation involving the entire extremity.

Appellant urges that the evidence fails to provide proof of any aggravation upon which a verdict might be based.

■■ The Supreme Court has settled the test to be:

"* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. The Peoria and Eastern Railroad Company* (1967), 37 Ill.2d 494, 229 N.E.2d 504, 513.

■■ Dr. Immerman's testimony puts the question of whether there was aggravation in issue. Other medical witnesses, including some called

by plaintiff testified to the contrary. But there was evidence upon which the jury could base its finding.

The next reason advanced by defendant for his motion is that plaintiff failed to sustain his burden of proof as to malpractice by Dr. Culmer. The principal area of treatment wherein negligence and malpractice are imputed to defendant is the permitting of plaintiff to ambulate without taking additional x-rays when the admitting and working diagnosis included "possible vertebral fractures".

■■ The plaintiff must prove by affirmative evidence that defendant was unskillful or negligent and that his want of skill or care caused injury to, or aggravated an injury of the plaintiff. *Scardina v. Colletti* (1965), 63 Ill.App.2d 481, 488, 211 N.E.2d 762; *Dimitrijevic v. Chicago Wesley Memorial Hospital* (1968), 92 Ill.App.2d 251, 236 N.E.2d 309, 312.

■■ Generally, it is necessary for a plaintiff to show by expert testimony not only that the injury occurred, but that such an event does not ordinarily occur in the normal course of events without negligence. *Graham v. St. Luke's Hosp.* (1964), 46 Ill.App.2d 147, 157, 196 N.E.2d 355.

Again measuring the evidence by the Pedrick test, Dr. Jack Robbins an orthopedic surgeon testified that, "one can only say that the treatment for an unstabled cervical fracture is not ambulation, and whether it would cause any damage in a specific patient, I don't know."

Dr. Immerman, maintains an office at Highland Park and is on the staff at Highland Park Hospital, in Lake County, in which county Condell Memorial Hospital is located and in which Dr. Culmer offices and practices. He testified on the hypothetical basis that the usual and customary skill that one would anticipate in Lake County in similar cases and similar circumstances "for certain" was not applied. He then, over objection, gave his reasons for the opinion.

■■ The testimony of the medical witnesses here clearly established a basis for a jury question and the jury's decision.

■■ The trial court gave the measure of damages instruction and included IPI 30.02 nature, extent and duration of any injury, IPI 30.03 on aggravation of pre-existing condition, and IPI 30.07 on value of earnings lost. Defendant argues that giving this instruction was error because it permitted the jury to conclude that there was a new injury, whereas there was no competent evidence of aggravation and no testimony regarding a new injury. We cannot agree. The testimony as to aggravation has previously been appraised herein. Respecting a new injury Dr. Immerman testified that the ambulation could have caused damage to the spinal cord.

■■ Defendant contends that there was no evidence of plaintiff's lost wages or any foundation for future earnings. Plaintiff was 19 at the time of hospitalization was a minor under the law as it was then in Illinois. The courts have permitted an inference of future loss of earnings from the nature of the injury, and have permitted this instruction where evidence is adduced of some permanent injury to a minor child. *Redmond v. Huppertz* (1966), 71 Ill.App.2d 254, 260, 217 N.E.2d 85.

■■ Next defendant urges that giving the issues instruction was error, since it was not a concise statement of the issues, contained repetitions in detail and emphasized plaintiff's charges. While the issues instruction tendered and given was a page and a half as defendant complains, and although it contains seven phrases of allegations in the complaint, a study of them fails to show that any were dispensable or avoidably repetitious. The issues in the case were not simple and it is difficult to see how the trial court could have fully instructed the jury on the issues more concisely than he did.

Next defendant assigns as error repeated references by name to Dr. Culmer in passing upon objections to testimony in the jury's presence. The case could not have been an easy case to try, for counsel, court or jury. Multiple parties, voluminous, involved and technical evidence made the task complex. When a divided ruling is made it is essential for the trial court to inform the jury, since they are expected to separate the evidence to conform to the ruling and weigh it accordingly.

■■ We are unable to find in the record that the trial judge went out of his way or exceeded the boundaries of proper practice in explaining his divided rulings for the record and the jury. To say his references in ruling made Dr. Culmer a target defendant is without merit.

■■ Defendant contends the trial court over objections permitted testimony to be repeated on matters that had already been covered. The multiple symptoms and injuries, the use of the hypothetical question, the opportunity for three lawyers to object and to cross-examine, and the necessity to explain in detail to laymen jurors the involved medical evidence all contributed to repetition or what appears to be repetition from a reading of the record. Indeed, frequently involved inquiry, objections and discussion would cover many pages before the court could resolve the problem and get back to the question. The repetition certainly was not contrived but a by-product of the multiple problems in trying this kind of case.

■■ Defendant's assignment of error that the entire hospital record was submitted to the jury was first made at the post trial motion. There is some question from the record as to whether this did occur, but it

358

should have been raised before the jury retired to deliberate. It is of no value to raise it afterwards.

Plaintiff's counsel in final argument made statements and remarks claimed by defendant to have been an appeal to jurors' emotions. There was objection by counsel for two defendants. The court promptly instructed the jury to disregard the remarks. In his discretion the trial judge did not consider the remarks so prejudicial as to warrant a new trial. From his observation of over two weeks of trial and his vantage point he considered it not prejudicial and we cannot view his decision as an abuse of discretion.

■■ Defendant's concluding argument is that the verdict was clearly a result of passion and prejudice against Dr. Culmer. The amount of the verdict could well have been within the limits of the evidence considering the age of plaintiff and the residual impairments which the jury determined were caused by the defendant's negligence.

The judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J., and ABRAHAMSON, J., concur.