KIRT MARTIN HARTSEIL, Plaintiff-Appellant, *v.* GEORGE R. CALLIGAN *et al.*, Defendants-Appellees.

Third District   No. 75-231

Opinion filed August 10, 1976.

Glenn J. Church, Ltd., of Peoria, for appellant.

Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellees.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

On April 5, 1973, plaintiff, Kirt Hartseil, then age 16, was riding as a passenger on a motorcycle driven by Roger Markle in a northerly direction on Western Avenue, near its intersection with 7th Avenue in Peoria, Illinois. At this intersection Western Avenue is four lanes wide with two lanes of traffic going both north and south. Defendant George R. Calligan (hereinafter defendant) driving a taxicab for defendant Peoria Yellow-Checker Cab Corporation was at that time driving in a southerly direction on Western Avenue. Both vehicles approached the intersection in the left-hand lane of their respective directional traffic. The motorcycle riders intended to travel straight through the intersection. Defendant intended to turn left (east) onto 7th Avenue.

Defendant approached the intersection going down an incline. The motorcycle was climbing the incline as it approached the intersection. Markle downshifted the gears of the motorcycle to second gear and his speed had diminished to about 20-25 m.p.h. when it reached the intersection. Defendant entered the intersection at a speed of 5-10 m.p.h.

Defendant said that he had driven over this intersection frequently. He knew that it had been the scene of many accidents in the past and was fairly dangerous. He also knew that the incline creates a blind spot for northbound (uphill) traffic. To a certain extent there is a blind spot when driving down the hill, but a full view of uphill traffic is achieved by driving completely into the intersection before turning. As defendant approached the intersection, he looked before turning and saw nothing until he saw the light of the motorcycle about 10 feet away from him. He did not see the motorcycle itself until it hit the taxicab.

Plaintiff and Markle, when at the bottom of the hill, saw the taxicab stopped at the top of the hill in its own southbound lane with a left turn signal on. Starting up the hill, the motorcycle entered the stretch having the blind spot, and came out of the blind spot about 30 feet from the intersection. At that time Markle saw defendant in his (Markle's) lane of travel; Markle swung the motorcycle sideways to the right to try to avoid an accident, but he could not avoid impact. The motorcycle occupants were thrown upon the hood of the taxicab. Plaintiff was then thrown to the street and rendered unconscious. Markle testified that, after the accident, defendant said: "I am sorry, I just plain didn't see you."

Plaintiff was taken by ambulance to the hospital where he was a patient

for 11 days. Injuries he sustained included a compression fracture of the second lumbar vertebra, multiple contusions and abrasions, and a bump on the head. While in the hospital plaintiff developed kidney trouble which caused blood in his urine. Upon release from the hospital, plaintiff wore a back brace 15 hours per day for approximately three months; he also lost approximately four weeks of schooling. He testified that he suffers pain while engaging in certain athletic endeavors and other activities. If he tries to lift heavy objects or if he stays bent over for a long period of time, it is hard for him to get back up. He does not receive treatment for these ailments, but does take aspirin. Plaintiff missed eight weeks of work at $2.75 per hour, and had medical expenses of $1285.10.

After the jury returned a judgment in favor of plaintiff in the amount of $10,000, plaintiff filed a motion for additur or for a new trial on the issue of damages only. The motion was denied. Plaintiff appeals, contending that the trial court erred in refusing to instruct the jury concerning the loss of future earnings. Plaintiff argues that he was entitled to such an instruction because the evidence showed permanent injury. Defendants submit that the evidence did not show with reasonable medical certainty that the injury was permanent, and that the evidence of the nature of the injury failed to establish any future adverse effects.

■■ In Illinois the trier of fact may infer a future loss of earnings from the nature of an injury, and courts have permitted an instruction to that effect where evidence is adduced of some permanent injury to a minor child. (*Huff v. Condell Memorial Hospital* (1972), 4 Ill. App. 3d 352, 280 N.E.2d 495.) The evidence in the instant case included testimony by Dr. Novotny, an orthopedic surgeon, that plaintiff had a compression fracture of the second lumbar verbebra. The doctor stated his prognosis:

"* * * that, first the fracture will heal. Secondly, that it will heal with some residual deformity which is permanently visible by X-ray and that this residual deformity disturbs the mechanics of the back at this level and because of compensatory mechanism above and below, it disturbs the mechanics of the spine somewhat above and below that level, as well."

The doctor said that this would be a permanent condition, and "* * * possibly this particular injury would preclude his engaging in some occupations." When asked what occupations the injury could affect, the doctor stated:

"I think this injury would restrict him from being employed by any company, who in their pre-employment evaluation, obtains an X-ray of the lumbar spine, because this deformity will be visible and will exclude him from employment in a company which does that, and, secondly, because of the mechanical disturbance of the spine

> this can leave a weakness of the back and thus he may have trouble in the future, with work which will require a lot of bending or heavy lifting."

Plaintiff, a minor at the time of the accident, testified that he has pain every day and that it hurts him if he tries to lift heavy objects or if he bends over for a long period of time. From this evidence the jury could conclude that plaintiff's injury is permanent. Under these circumstances plaintiff was entitled to an instruction concerning the loss of future earnings. It was error to refuse plaintiff's instruction to that effect. In conjunction with such instruction the giving of an instruction on life expectancy based on a mortality table is proper in order to aid the jury in their deliberations. *Hollis v. Terminal Railroad Association* (1966), 72 Ill. App. 2d 13, 218 N.E.2d 231.

■■ Having concluded that the cause must be remanded, we face the issue of whether a new trial on damages only is warranted. The general rule is that a new trial may be granted for damages alone only where the damage issue is so separable and distinct from the issue of liability that a trial on it alone may be had without injustice. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275.) Where the record shows that there was enough evidence for a jury to find a defendant liable, the court may order a new trial on the question of damages alone where it appears that the jury improperly assessed the amount of damages. (*King v. City of Chicago* (1964), 53 Ill. App. 2d 484, 202 N.E.2d 839.) The court may not order a new trial on damages alone where it appears that the damages awarded by the jury were a compromise on the issue of negligence. *Paul Harris Furniture Co.*

■■ The record in this case does not indicate that the jury compromised on the issue of liability. Defendant knew that if he did not go completely into the intersection, he would be in a blind spot and would not have a clear view of the traffic coming up the hill. He testified that he looked before he turned and saw nothing until he saw the light of the motorcycle 10 feet away from him. Roger Markle stated that the taxicab was in the north part of the intersection when it turned. From this evidence, the jury was justified in finding defendant negligent. The amount of the judgment also does not indicate a compromise. In *Keel v. Compton* (1970), 120 Ill. App. 2d 248, 256 N.E.2d 848, cited by defendants, the jury award was clearly inadequate based upon the damages proven. There the deceased husband of the plaintiff had earned at least $6,000 in each of the two preceding years, and would have earned at least $18,000 more before retiring. The jury awarded only $5,000. On that basis, the court found that the verdict may have been a compromise of liability versus damages. Here, however, the jury's award of $10,000 cannot be said to be less than the damages proven. Plaintiff's evidence

showed hospital and medical bills and loss of wages totaling a little more than $2,000. The award was thus substantial. We conclude that the damages issue is sufficiently separable and distinct from the issue of liability that a trial on damages alone may be had without injustice.

The judgment of the circuit court of Peoria County is reversed and the cause remanded for a new trial on the issue of damages only.

Reversed and remanded.

GREEN and REARDON, JJ., concur.