THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EVERETT WAYNE GODSEY, Defendant-Appellant.

Third District   No. 77-214

Opinion filed February 22, 1978.

STOUDER, J., dissenting.

James N. DeWulf, of Moline, for appellant.

Edward Keefe, State's Attorney, of Rock Island (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Rock Island County and the factual situation which resulted in this appeal is as follows.

On May 4, 1976, the defendant was indicted for (1) arson occurring on February 1, 1976; (2) solicitation to commit arson, the solicitation occurring on March 4, 1976; (3) burglary with intent to commit arson occurring on or about February 9, 1976; (4) solicitation to commit arson occurring on February 10, 1976; (5) arson occurring February 13, 1976. On September 13, 1976, the defendant was indicted in two counts for offenses of solicitation to commit arson during February 1976. All acts of arson and burglary at issue occurred at the residence of Mr. and Mrs. Thomas Crom in Silvis, Rock Island County, Illinois.

Prior to trial the trial court dismissed the indictments as to the two counts of solicitation to commit arson during February 1976 for lack of jurisdiction on the grounds that the offenses were alleged to have occurred in the State of Iowa. The trial judge also denied an oral motion to dismiss the March 4, 1976, solicitation and conditionally allowed defendant's motion in limine for the purpose of excluding testimony regarding those solicitations, as well as a Henry County solicitation and an interim shooting attempt at the victim.

A verdict of guilty on the five remaining counts was returned by a Rock Island County jury. A presentence hearing was conducted and the defendant was sentenced to concurrent terms of one to 10 years imprisonment on the February 1, 1976, arson; the March 4, 1976, solicitation; the February 13, 1976, arson; and the February 10, 1976, burglary. The February 10, 1976, solicitation charge was deemed merged in the offense of the February 10, 1976, burglary and arson. Defendant appeals from the judgment entered on the verdict of the jury.

On February 1, 1976, there was a fire in the residence of Thomas Crom in Silvis, Rock Island County, Illinois. A second fire occurred there on February 13, 1976, and a third on March 6, 1976. Defendant was in jail at the time of the third fire.

The Silvis Fire Department was unable to investigate for arson at the time of the first fire which caused extensive damage to the basement and first floor of the house due to the burning of the floor joists. The fire on February 13, 1976, was in the garage and four places in the house.

After the second fire material suitable for use as an accelerant was found spread about in the house and in the garage area as well as in a container. There was also evidence that some paper towels which had partially burned were found rolled up in a corner. Accidental cause for the second fire from electrical appliances was ruled out by Hollis, a State fire inspector, because the electricity was turned off prior to the second fire. It was Hollis' opinion that all three fires were set fires, also that a fuse found between the first and second fires was not involved in either fire.

Billy Meyers testified that on February 10, 1976, two days before his birthday, he brought his car to defendant to be repaired. He agreed to burn down Crom's house for defendant for the sum of $45. Defendant told Meyers he had tried to burn it down earlier in February but had failed. Defendant told Meyers that Crom cheated him out of money. Crom was to testify that he had reported defendant for drawing disability insurance when defendant was able and working.

The defendant paid Meyers $15 at one tavern and $30 later at another tavern (Dolly's Tap in East Moline) and said he was going to Bettendorf, Iowa, to set up an alibi. The balance was originally to have been paid at the Maverick tavern in Bettendorf. The witness did not set the fire, but went to see the police. In conversations with Billy Meyers and undercover deputy sheriff Fisher, at a meeting in Henry County, the defendant said he had tried to burn the house down.

At that meeting (March 4, 1976) the defendant asked Meyers to return the $45 because Meyers had not set the fire. Defendant told the two that he would give them a chance to burn it again, giving them only $20 to do the job this time with the balance upon completion. The defendant also stated at this time that he knew someone was informing on him and asked Meyers whether he had snitched, noting that Meyers and Fisher were the only two persons who knew of the plan to burn the house. Defendant then stated if he found anyone snitching on him he would kill that person. Prior to this occasion some undetermined person shot at the victim Crom in his truck but only the truck was damaged.

Thomas Seidlitz and Brad McMillan testified that one night in February 1976, the defendant came to them at the Maverick in Bettendorf, Iowa, and offered to pay them to burn down his brother-in-law Crom's house because he was mad at the brother-in-law for having caused the defendant to lose some money. They further testified the defendant told them the house was partially burned and was now set up so that the

witnesses need only throw in a Molotov cocktail. They thought defendant was drunk and did not take him seriously.

There was also evidence that Crom received two letters, one in an envelope postmarked February 11, 1976, between the first and second fires, and a second letter in an envelope postmarked February 18, 1976, after the shooting incident which occurred after the first two fires. While the prosecution F.B.I. handwriting analyst could not make a positive comparison between the letters and specimens of defendant's handwriting, defendant's girlfriend testified that the letters were written in defendant's handwriting. We note there is nothing in the record presented for review to indicate whether a proper foundation for her handwriting identification existed.

The defendant was arrested shortly after his meeting with Meyers and Fisher in Henry County. He was in jail when the fire of March 6, 1976, occurred. However, defendant's ex-girlfriend testified that defendant pointed out to her the house of a man he said was named Bumper and told her that Bumper set Crom's house on fire while the defendant was in jail, as a favor to him. This favor was apparently unsolicited. This conversation occurred after defendant was released on bail and was driving his ex-girlfriend back from the Maverick in Bettendorf, Iowa.

At trial, Deputy Fisher testified that Troy LaVan (also known as Bumper) lived in the house which the girlfriend had pointed out to Fisher as the house that defendant had pointed out to her.

Little will be added to this opinion to review the testimony of an investigator for the State Fire Marshall. Suffice to say that his testimony excluded possibilities of accidental fire from electrical and gas appliances and spontaneous combustion. From his observation and tests he was unable to positively determine what methods or materials were used to set the fires.

The defendant was found guilty of all charges. New counsel filed timely and extensive post-trial motion. That motion was denied. Defendant was sentenced to concurrent one- to 10-year terms of imprisonment on all charges except the solicitation of Billy Meyers to commit arson on February 10, 1976, which the judge found had merged into the February 13, 1976, arson.

After sentencing the defendant appeared with a third counsel and on the day after he filed two notices of appeal, as well as a supplemental motion for a new trial. Attached to the motion were affidavits of the victim and two others which were offered as new evidence and by way of impeachment of the testimony of the ex-girlfriend.

■■ Apparently it is defendant's theory that the testimony of his jilted mistress convicted him and that she wanted revenge to the point of giving false testimony that defendant's eyebrows, beard and hair were singed

the day after one of the fires. This court finds there was sufficient evidence to sustain the verdict of guilty even if the ex-mistress had never testified.

First, the defendant contends that error occurred due to the trial court's refusal to give IPI Criminal No. 3.02 (circumstantial evidence) in its entirety. In the instruction conference the prosecution conceded that for one of the five charges, burglary with intent to commit arson on February 9, 1976, there was no direct evidence. This court has on several occasions within the past few years considered the omission of the second paragraph of the instruction. (*People v. Fletcher* (1976), 40 Ill. App. 3d 537, 352 N.E.2d 10; *People v. Minish* (1974), 19 Ill. App. 3d 603, 312 N.E.2d 49.) The second paragraph of IPI Criminal No. 3.02 is:

> "You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The Committee Comments indicate that the entire instruction was intended for cases in which all evidence is entirely circumstantial; the paragraph in question is to be omitted where there is direct evidence of defendant's connection with the actual crime. Evidence that a crime was committed (corpus delecti) is quite distinct from evidence that the crime was committed by the particular defendant. To illustrate for the case in point: the plaintiff argues that the firemen gave direct testimonial evidence that there were indeed various fires at the victim's residence. What plaintiff's argument fails to perceive is that the particular direct evidence of actual fires was not direct evidence that the defendant Godsey is criminally responsible for those fires.

■■ Moreover, this court, while having expressed the bench and bar's need for better definitions of direct and circumstantial evidence, has also expressed dissatisfaction with the second paragraph of IPI Criminal No. 3.02. (*People v. Fletcher* (1976), 40 Ill. App. 3d 537, 352 N.E.2d 10.) The jury should be given a cautionary instruction before determining the guilt or innocence of a defendant who is connected to a particular crime only by circumstantial evidence, but it occurs to this court that in attempting to caution the jury, through the nuance of language, the second paragraph misstates the law. We would suggest: "You should not find the defendant guilty on the basis of [entirely] circumstantial evidence which may or may not connect the defendant to the commission of [each] the crime charged, unless the facts and evidence exclude every reasonable doubt of innocence as to [each] [the] crime charged."

■■ The statements (admissions) of defendant made to his girlfriend, Mr. McMillan, Mr. Seidlitz, Deputy Fisher and Billy Meyers constitute direct evidence of his connection to all crimes for which he was tried, with the possible exception of the burglary charge. We hold that the trial court did not err in deleting the second paragraph of IPI Criminal No.

3.02. (*People v. Fletcher* (1976), 40 Ill. App. 3d 537, 352 N.E.2d 10; *People v. Minish* (1974), 19 Ill. App. 3d 603, 312 N.E.2d 49.) In regard to the burglary with intent to commit arson charge, we hold the omission of paragraph second to be no error in view of our holding that the second paragraph of IPI Criminal No. 3.02 does not properly state the law. Further IPI Criminal No. 3.02 would have needed modification for the multiple charges which defendant did not tender to the trial court.

■■ Second, defendant contends that he cannot be convicted in Rock Island County for a crime alleged to have occurred in Henry County, Illinois (March 4, 1976, solicitation of Billy Meyers and Deputy Fisher to commit arson in Rock Island County, Illinois). From the abstract of record presented we are unable to determine whether defendant's trial counsel objected to venue prior to trial. The State's citation of section 1—6(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—6(a)) to the trial judge was not the sole controlling statute on defendant's motion for directed verdict; however, section 1—6(n) (Ill. Rev. Stat. 1975, ch. 38, par. 1—6(n)) is also applicable and provides in part:

> "Accountability for Conduct of Another.
>
> Where a person in one county solicits, * * * another in the planning or commission of an offense in another county, he may be tried for the offense in either county."

Therefore, even if defendant had raised objection to venue prior to trial, it would have properly been overruled in the Rock Island County Circuit Court, and the motion for directed verdict based on the question of venue was properly overruled.

■■ Third, defendant objects to the repeated attempts of the sheriff's office to interview his wife. We direct the attention of both parties to Supreme Court Rule 415(d) (Ill. Rev. Stat. 1975, ch. 110A, par. 415(d)), which would have permitted defendant to obtain a protective order. No such protective order was sought. The wife was steadfast and did not succumb to the questioning except a minor retort during a trial recess. While we do not condone the investigator's conduct, we do not find prejudicial error to defendant's right to a fair and impartial trial.

Fourth, defendant claims error in the admission of evidence of other crimes. The judge apparently reversed his original constitutional grant of the motion in limine. The prosecution conducted the trial on the theory that defendant embarked on a vendetta against his brother-in-law (Crom) for turning defendant in to an insurance carrier from whom he was wrongfully collecting disability insurance. We find no error.

> "Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence

which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense." *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93.

■■ Next, it is necessary to sort out constitutional rights of the defendant, evidence rules as to spousal privilege, and witness impeachment through prior inconsistent statements. Any argument advanced in this court, couched in terms of constitutional rights of the witness-wife and witness-brother of the defendant, are held inapplicable because a party lacks standing to assert the violation of constitutional rights of nonparties or witnesses. However, arguments of the treatment and cross-examination of witnesses impliedly raise issues as to defendant's constitutional right to a fair trial.

Therefore, was the defendant's constitutional right to a fair and impartial trial infringed where the prosecution (1) called defendant's wife before the grand jury, (2) cross-examined her at trial as to her use of the fifth amendment before the grand jury, and (3) repeatedly approached her via a sheriff's investigator even through the trial. The same propositions also apply to defendant's brother.

Proposition (1) is novel. We know of no Illinois case that has prohibited the calling of a spouse or other relative before the grand jury. The only way the trial jury ever becomes aware of any grand jury testimony is when the same person testifies in both places. If the testimony before the grand jury is different, the party calling the witness at trial should be prepared to reconcile the inconsistency or capitalize on the inconsistency. However, use of fifth amendment refusal before a grand jury is not inconsistent with innocence asserted at trial. *United States v. Tomaiolo* (2d Cir. 1957), 249 F.2d 683.

■■ A similar situation was presented in *United States v. Tomaiolo* (2d Cir. 1957), 249 F.2d 683, where a brother of a defendant claimed fifth amendment testimonial refusal before a grand jury. Trial was in Federal court in the Eastern District of New York. He later testified fully as to his own innocence at the brother's trial, whereupon the prosecution was allowed to cross-examine and bring the witness-brother's use of the fifth amendment before the trial jury over defense objection, thereby attacking the credibility of the brother-witness. The court relied upon the reasoning of *Grunewald v. United States* (1957), 353 U.S. 391, 1 L. Ed. 2d 931, 77 S. Ct. 963, in finding the cross-examination regarding use of the fifth amendment was improper and should have been excluded because the impermissible impact on the jury far outweighed the negligible probative value it would have on the witness's credibility. While the ruling in *Tomaiolo* is not binding on this court as would be a decision of the United States Supreme Court, we find its reasoning on this issue

persuasive. (*People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431.) Even the vigorous dissent in *Tomaiolo* acknowledged the serious nature of the fifth amendment issue.

After considering *Tomaiolo*, this court would rephrase the crux of the problem. In reality, a witness's prior use of the fifth amendment, when brought before the trial jury, so tends to destroy the credibility of the witness that to allow such cross-examination would have the effect of deleting that part of the fifth amendment from our Constitution and encourage the evils it was intended to remove from our system of government. Also, to impeach a witness by his prior silence invites the danger that the jury will improperly infer guilt on the witness and transfer that inference to the defendant. (*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975.) We are convinced from reading *Tomaiolo* that the court was responding to the two arguments propounded by the government in support of their use of the cross-examination. Those arguments were (1) the jury's right to be informed of inconsistency in position and testimony of the witness, and (2) the witness's "wanton misuse" of the "privilege" to refuse to testify and an asserted right of the government to capitalize on such "abuse" to attack the credibility of the witness. A court faced with such insensitive prosecutorial disregard for constitutional rights may have to respond as the *Tomaiolo* court.

The *Tomaiolo* witness was in a factual situation before the grand jury where he needed to invoke the fifth amendment because superficially culpable facts existed. He could not call witnesses in his defense before the grand jury. He was apparently an innocent person in a complex criminal case, where his mere relation to a defendant created suspicion. The prosecution, by capitalizing on the brother relation in conjunction with the witness's prior use of the fifth amendment, destroyed the credibility of the defense witness and unduly prejudiced the defendant. The guilty verdict was reversed on the basis of accumulated errors.

In a criminal matter where a witness has a close tie to a defendant, by affinity or marriage, and where the witness has previously invoked the protection of the fifth amendment in regard to that matter, the prosecution commits error when it causes to be divulged to the jury the witness's prior use of the fifth amendment. (*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975; *United States v. Tomaiolo* (2d Cir. 1957), 249 F.2d 683.) *Rubin* extended the holding to encompass business associates. The prosecution may cross-examine as to other matters to establish witness bias or interest or impeachment. (*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975.) Whether the error causes reversal depends on the circumstances of the trial. The error is in the undue prejudice caused to the defendant, not in the infringement of the witness's constitutional right.

The error is reversible when it infringes on defendant's constitutional right to a fair and impartial trial.

An Illinois case which considered a related issue is *People v. McLean* (1971), 2 Ill. App. 3d 307, 276 N.E.2d 72. There both defendant and a defense witness were cross-examined as to their assertion of their *constitutional right to remain silent while in custody*. The defense witness was unrelated to the defendant. The court there held:

> "Therefore, any prejudicial inferences which may be drawn from [witness's] desire to remain silent may be considered by the jury in assessing the guilt or innocence of the defendant. However, there were persistent references to the fact that (defendant), too, had claimed his right to remain silent. *Even the repeated objections of counsel and adverse rulings of the court cannot be considered sufficient to protect the defendant's case from being prejudiced.*" (Emphasis added.) *People v. McLean* (1971), 2 Ill. App. 3d 307, 310-11, 276 N.E.2d 72, 75.

The present case is distinguishable in that Godsey's witnesses who were cross-examined as to their grand jury silence were his wife and brother, whereas the *McLean* witness was unrelated to the defendant. However, we do not believe that Godsey was unduly prejudiced by the cross-examination of his wife and brother as to their grand jury refusals. Where Godsey was prejudiced was in his own personal lack of silence.

Defendant has cited several cases outside the State of Illinois which have dealt with husband-wife privileged testimony. Since statutes involved differ from that of Illinois in some cases, and in others the State had called the wife as a witness which forced the defendant-husband to invoke the privilege and thereby appear to be hiding the truth from the jury, those cases will not be considered. Godsey called his wife in his defense.

■■ In the present case the State claims that the defendant waived objection to cross-examination of the wife by the mere fact of calling her as a witness. No party ever waives objection to improper cross-examination of his witness, regardless of the relationship.

We are not sure from the briefs whether both parties confused spouse privilege to refuse to testify for or against a spouse (*People v. Palumbo* (1955), 5 Ill. 2d 409, 125 N.E.2d 518) with the constitutional right to refuse to testify on grounds of self-incrimination, married or not, and with the constitutional right to a fair and impartial trial.

■■ ■■ To avoid misinterpretation we hasten to add that no spouse may waive the fifth amendment *right* of the other. However, a party may call his or her spouse as a witness. (Ill. Rev. Stat. 1975, ch. 38, par. 155—1.) In so doing the party waives the right to claim spouse privilege to prevent

the spouse from testifying. But, although we have no exact Illinois case for authority, the witness spouse apparently has three choices once upon the witness stand: (1) proceed to testify except as to confidential communications during marriage (*People v. Simpson* (1977), 68 Ill. 2d 276, 369 N.E.2d 1248; *People v. Palumbo* (1955), 5 Ill. 2d 409, 125 N.E.2d 518); (2) in a criminal matter, claim fifth amendment constitutional right; or (3) claim witness spouse privilege to refuse to testify for or against the party spouse as to confidential events or matters of occurrence during marriage (unless the statutory exceptions are in force) (*People v. Palumbo* (1955), 5 Ill. 2d 409, 125 N.E.2d 518). As a matter of practical jurisprudence, the party calling the spouse witness will expect proper cross-examination as to all matters of testimony elicited on direct examination as well as questions to show bias or interest of the witness.

Defendant's post-trial counsel contends the fifth amendment line of cross-examination was plain error, not requiring trial objection to preserve the issue for review. The State claims that defendant, by failing to object at the trial to the particular cross-examination of the spouse, waived the issue for appeal. Since the Federal cases both parties have cited to this court for resolution of the issue have devoted lengthy portions of opinions to the general issue of government impeachment attempts via witness's prior use of the fifth amendment, this court deems the matter a serious issue which should not be lightly turned aside due to lack of objection in the trial court. Further, another appellate court of this State has commented upon the effectiveness of trial objection and court admonishment to the prosecution on this very issue. *People v. McLean* (1971), 2 Ill. App. 3d 307, 276 N.E.2d 72.

■■ While we do consider the error in cross-examination here reviewable without contemporaneous objection at trial, we hold the error here did not infringe upon defendant's right to a fair trial. (*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975.) Granted, the prosecution attempted to capitalize upon the raw nerve edge of defendant's marital infidelity and called the jilted mistress as a prosecution witness. Defendant called his wife to counter the testimony of the former mistress and to establish an alibi. If these two were the only witnesses, the prosecution use of the wife's fifth amendment responses in the grand jury proceedings could have amounted to reversible error. But here the State had witnesses (friends of defendant) to testify as to the defendant's braggadocio and solicitations.

We will not indulge in speculation of any basis the wife may have had in asserting her fifth amendment right before the grand jury. She could have refused to testify before the grand jury on the sole basis that she was the spouse. Trial defense counsel chose not to "rehabilitate" the wife's testimony at the trial after advising her to use the fifth amendment before

the grand jury. Both are permissible tactics. Unlike *Tomaiolo*, this appeal does not have serious accumulated errors.

The sixth amendment to the United States Constitution has been interpreted to require that a new trial in a criminal matter be ordered where retained legal representation of the defendant was of such low caliber as to reduce the court proceedings to a farce and amount to no representation at all. *People v. Turner* (1975), 25 Ill. App. 3d 847, 323 N.E.2d 271; *People v. Stanley* (1972), 50 Ill. 2d 320, 278 N.E.2d 792.

Defendant was represented at trial by a non-Illinois attorney of his own choice; at post-trial state he was represented by Illinois attorneys. During the trial the first attorney was conditionally granted a motion in limine as regards the solicitations allegedly committed in Iowa and the later shooting attempt of the fire victim; but later the judge withdrew the ruling and allowed testimony thereon without objection by the defense; the trial attorney repeatedly and unsuccessfully objected to expert testimonial evidence for lack of foundation, allowed extensive leading questions of the victim by the prosecutor, and had defendant's wife testify to corroborate an alibi after she had refused to testify under the protection of the fifth amendment to the United States Constitution before a grand jury.

■■ It is a matter of trial tactics and judgment whether the defense will continually bombard the prosecutor and victim with objections as to leading questions and lack of foundation, running the risk of increasing jury sympathy for the victim and creating jury distrust and irritation with the defense. Trial tactics and judgment are not a basis to establish incompetency of counsel and appellate courts do not engage in discussion or second guessing as to the defense success if alternative tactics had been chosen. *People v. Grant* (1976), 38 Ill. App. 3d 62, 347 N.E.2d 244; *People v. Holmes* (1975), 28 Ill. App. 3d 775, 329 N.E.2d 304.

■■ After several of Godsey's friends testified to statements, comments, admissions and implied confessions by defendant, it is unlikely that even the most skilled of trial attorneys could have convinced a jury that defendant had a valid alibi. It was for the jury to decide whether defendant was with his girlfriend or his wife on one of the evenings charged in the indictments. This case does not require a new trial due to any assertions of inadequacy of the defendant's attorney.

Defense counsel was placed in the unenviable situation of representing a defendant who had widely broadcasted his own wrongdoings. There is no question that the defendant was proved guilty on all counts beyond a reasonable doubt. Even though the victim, a witness, and a third person executed affidavits to the post-trial attorney regarding the lack of facial burns and singed hair on defendant the day following an (undated) fire at victim's home, which counters certain detail testimony of the jilted

girlfriend, the defense has nothing to counter the testimony of the witnesses who related the self-condemning barroom conversations of the defendant, as well as his conversations with a person or persons he tried to hire to set the fires.

Judgment affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I do not agree with the opinion of my colleagues. I believe there were errors which occurred during the course of this trial which can not be regarded as harmless and consequently I believe a new trial is required.

The first issue considered by the majority relates to the propriety of the court's ruling refusing to give the second paragraph of IPI Criminal No. 3.02. My views on the problems created by this instruction have previously been set forth in my special opinions in *People v. Fletcher*, 40 Ill. App. 3d 537, 352 N.E.2d 10, and *People v. Minish*, 19 Ill. App. 3d 603, 312 N.E.2d 49, and need not be restated here. The majority held that admissions are direct evidence relying on *People v. Fletcher*, 40 Ill. App. 3d 537, 353 N.E.2d 10, which in turn relies on *People v. Brown*, 40 Ill. App. 3d 562, 352 N.E.2d 15. Whether admissions are direct evidence is in my mind somewhat doubtful since both the content and the circumstances surrounding the making of an admission insure such a wide range of probative value that it is difficult to assess such evidence in terms of the certainty that the instruction is designed to promote. For example, how should one evaluate admissions to a mistress thereafter jilted, or admissions to barroom buddies who think the declarant is joking, or admissions to individuals who are apparently willing to agree to set a fire for a mere $45? As I have indicated earlier, why the second paragraph of the instruction should only be given if the evidence is entirely circumstantial escapes me, except that there seems to be some feeling among the drafters of the instruction that perhaps under some circumstances the standard of proof, beyond a reasonable doubt, had not been sufficiently defined. As can be seen from the instruction, the second paragraph does not even refer to circumstantial evidence and if it did I think some definition would be required. This brings me then to the holding of the majority that the second paragraph of the instruction does not correctly state the law. Without citing any precedent or for that matter giving any reason for their holding, the majority proposes an alternative which includes mention of circumstantial evidence without defining same and holds that this is a correct statement of the law. I do not agree with this conclusion and in any event the court's decision was not

based on any such argument. The trial court apparently believed the evidence of the fire was direct evidence, a position rejected by the majority of the court. In conclusion on this aspect of the case, it is my belief that the second paragraph of the instruction is a relevant consideration in the burden of proof concept, and should be given regardless of whether all of the evidence is circumstantial. If it is not a relevant consideration then it should not be given under any circumstances and the remarks to the contrary by the drafters of the instruction should be disregarded.

The next issue with which I disagree is that relating to the evidence that the victim or owner of the house was shot at. I believe the court ruled correctly on the motion in limine because in the absence of any evidence that it was the defendant who fired the shot, it is an irrelevant issue. It is not so much that it is evidence of another unrelated crime, but rather it is evidence irrelevant to any act of the defendant. If it could have been shown that it was the defendant who shot at the victim a different question would be presented. The only case cited in the majority opinion does not deal with this problem since in *People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489, not only was the evidence that of a similar offense, but one which the witness testified was committed by the defendant.

Finally, the majority hold that the cross-examination of defendant's wife and the defendant's brother was improper because it elicited the fact that each of the witnesses had refused to testify before the grand jury by exercising their fifth amendment privileges. I agree this conclusion is required by *United States v. Tomaiolo* (2d Cir. 1957), 249 F.2d 683, and *United States v. Rubin* (5th Cir. 1977), 559 F.2d 975. However, the reasons and logic for holding such cross-examination and purported impeachment improper compel me to believe that the impeachment was not only improper, but deprived the defendant of a fair trial and hence constituted reversible error.

In *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, the court held that errors will be regarded as harmless if the court believes beyond a reasonable doubt they did not contribute to the verdict of the jury. This standard is not referred to in the majority opinion and the issue seems to be resolved by referring to the defendant's admissions. While I believe the evidence including the admissions would be sufficient to support the conviction in the absence of this error, nevertheless the nature and circumstances surrounding the alleged admissions and the persons reporting such admissions present certain weaknesses affecting the probative value of the evidence. The testimony of a jilted girlfriend presented by the prosecution was contradicted by the wife. Additionally, it should be recalled that other admissions were reported by tavern buddies who thought the defendant was joking and by other persons who

admittedly agreed to commit a criminal offense for $45. If the testimony of the wife and the brother was discredited by improper impeachment, any support for the defendant's defense of alibi was admittedly destroyed and yet the majority opinion declares this effect to be without any significance. The unfair prejudice created by the improper impeachment of two witnesses both closely identified with the defendant constitutes substantially greater unfairness than the facts presented in *People v. McLean*, 2 Ill. App. 3d 307, 276 N.E.2d 72. Accordingly, I believe the defendant's conviction should be reversed and he should be granted a new trial.