THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD CHRISTIANSEN, Defendant-Appellant.

Third District   No.3—85—0531

Opinion filed April 24, 1986.

STOUDER, J., dissenting.

Roy A. Sabuco, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Howard Wertz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant was found guilty of three counts of forgery and one count of attempted theft under an accountability theory. On appeal he contends that: (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court erred in allowing a rebuttal witness to testify; (3) the trial court erred in refusing to give paragraph two of the circumstantial evidence instruction; (4) the trial court erred in giving the instruction on accountability; (5) certain prosecutorial misconduct denied him his right to a fair trial; and (6) the trial court erred in allowing cross-examination of the defendant concerning his occupational and educational background.

It is undisputed that the defendant's companion, George Brigham, forged the name of Joseph T. Holloway upon a retail installment contract, a watercraft application, and a title registration form. The following pertinent evidence was adduced at trial on the events preceding the forgery of these documents.

The State presented the testimony of Beverly Koerner (Beverly), former secretary-treasurer of All-Parts Motor, Inc., which does business as J & B Marine. Beverly testified that on January 6, 1984, the defendant and George Brigham came to her booth at the boat show held at McCormick Place. Brigham identified himself as "Joe" and referred to the defendant as "Bob." Brigham said he was going to buy a boat but did not know which one yet. Thereafter, the two men left.

On Saturday, January 7, 1984, the two men returned to the boat show. At that time, Brigham stated that they were not going to file a joint application for credit but that he ("Joe") would fill out the credit application in his name. The two men returned to the boat show again on Sunday morning, January 8, 1984. At that time, Brigham indicated that they wanted to buy a boat. However, the boat they wished to purchase was not at the Chicago Boat Show but was back at the company boat shop in Joliet. The price of the boat was also discussed. Thereafter, Beverly spoke to "Joe" and "Bob" and said that they would have to get their credit application approved by the Bank of Waukegan which had a booth at the boat show. The two men left but returned and stated that no one was at the Bank of Waukegan booth. The men indicated that they were in a hurry and had to leave, that

they wanted the application, and they would fill it out themselves and bring it back. Beverly gave them an application and said to the defendant, "Who are you, the silent partner?" The defendant responded Yes, and laughed.

Later that day, at approximately 5:45 p.m., the two men returned to the boat show. Brigham handed Beverly the completed credit application. Brigham also gave Beverly a deposit of $50. Brigham inquired whether the men could pick up the boat on Wednesday. Beverly indicated that the boat package would be ready on Wednesday, provided that the bank approved the credit application. Brigham then said that he was going to be out of town, and that Bob (referring to the defendant) would call on Monday to find out if the bank had approved the loan. Beverly testified that the defendant showed his agreement to this arrangement.

Beverly testified that she received a phone call from "Bob," and he inquired whether the credit had been approved. The following day, Tuesday, "Bob" called back again to find out the status of the credit application. The caller spoke to Beverly's husband, John. Later that afternoon, on Tuesday, Beverly received another phone call from "Bob." He stated that he would like to go the Bank of Waukegan and sign the paper there and pick up the check. However, Beverly informed him that the check would have to be sent down by special carrier. Beverly identified the person who spoke on the phone as the defendant, Richard Christiansen.

The next day, January 11, 1984, "Bob" called again and inquired whether everything was ready. Beverly informed the caller that everything would be ready after 3 p.m. That afternoon, Beverly received another phone call from "Bob." He wanted to know directions how to get to the boat dealership. Again, Beverly identified the voice as being that of the defendant. After the defendant and George Brigham arrived at the store, Brigham, purporting to be Joe Holloway, signed a retail installment contract, a watercraft application, and an application for registration pertaining to the trailer. At that time, the defendant was standing at the counter beside Brigham. According to Beverly, the defendant was situated so that he could see what was occurring. Thereafter, the men was arrested.

On cross-examination, Beverly explained that she could identify the voice of the person on the telephone as the defendant because the defendant had talked to Brigham at their store. On cross-examination, Beverly stated that the defendant was in a position to see the documents as Brigham signed them.

John Koerner (John), Beverly's ex-husband, former president of

All-Parts Motor, Inc., also testified. His testimony substantiated much of his ex-wife's testimony. John testified that Brigham set the completed credit application on the table, in a readable position, in a location where the defendant could easily see the application right in front of him. John also testified that he received a phone call from a person who identified himself as Bob Hegman. John testified that the following day he received another phone call from the same caller. The caller inquired when the boat would be ready to be picked up. The caller stated that Joe was running late and that he was going to pick him up at the train depot. John identified the caller as the defendant. John testified that there were additional phone calls that afternoon. He testified that the defendant called him asking for directions. John then testified as to the men's conduct at the boat dealership, including Brigham's signing of the documents.

The State also called Debra Miklic, a part-time employee of J & B Marine. Miklic testified as to events which she observed at the boat show. On cross-examination, Miklic testified that while Brigham and Beverly discussed the purchase of the boat, the defendant was present and nodded his head.

The defendant, Richard Christiansen, testified on his own behalf. Defendant testified that he had indicated that he was Brigham's silent partner. The defendant denied seeing the documents which Brigham gave to Beverly. The defendant also denied any knowledge of the use of false names. The defendant testified that he stood four to six feet from the counter where Brigham forged the documents. The defendant testified that the State's exhibits appeared to be similar in size and shape to the documents signed by Brigham. The defendant also testified that he asked the police officer, who was searching him, why he was being arrested and was informed he would find out when he got to police headquarters.

During rebuttal, the State presented Anthony Hernandez, staff investigator for the Will County sheriff's department. Hernandez personally took custody of the defendant. Hernandez testified that he was the officer who searched the defendant and handcuffed him. Hernandez testified that at no time did the defendant speak to him. John also testified that there was no conversation between the arresting officer and the defendant.

Section 17—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 17—3) defines forgery.

"Forgery.

(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another ***.

\* \* \*

(b) an intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property." (Ill. Rev. Stat. 1983, ch. 38, pars. 17—3(a)(1), (b).)

A person is legally accountable for the conduct of another when, "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c).

In this appeal, the defendant contends that the evidence was not sufficient to find him guilty under an accountability theory. He argues that he was merely present and did nothing to aid, abet, agree, or attempt to aid the forger.

■■ In order to bring an accused within the purview of section 5—2(c) of the Criminal Code of 1961, three propositions must be established: (1) that he solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offenses; (2) that this participation on his part must have taken place either before or during the commission of the offense; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Ramirez* (1968), 93 Ill. App. 2d 404.) The first issue for review turns on whether all the evidence when considered in the light most favorable to the prosecution satisfies these three propositions beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237.

■■ We conclude that there is sufficient evidence to support the jury's verdict. The resolution of the defendant's guilt or innocence depended upon the credibility of the witnesses and the weight given their testimony. When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) In this case there was enough evidence to establish that both before and during the offenses the defendant, with the specific intent to aid George Brigham, participated in an attempt to defraud the Koerners. The identification of the defendant by the Koerners as the person who misidentified himself as Bob Hegman and who inquired as to the status of the credit application and the location of the boat dealership is a sufficient basis from which the jury could have found that the defendant was an

accomplice. The defendant was present throughout the series of meetings and transactions between the Koerners and George Brigham. Circumstantial evidence was presented from which the jury could have inferred the defendant knew George Brigham was signing the documents under an assumed name. This evidence taken together with the direct evidence that the defendant used an alias when he called the Koerners is ample evidence that the defendant assented to the actions of George Brigham and thereby was indeed his "silent partner." We find the evidence, when considered in the light most favorable to the prosecution, satisfies beyond a reasonable doubt the three propositions set forth in *People v. Ramirez* (1983), 93 Ill. App. 2d 404.

██ ██ The defendant next argues that the State's rebuttal witness, Officer Hernandez, should not have been allowed to testify since his testimony was improper impeachment and therefore improper rebuttal evidence.

Rebuttal evidence is that which answers, explains, repels, contradicts, or disposes of new affirmative matters raised by defendant during the presentation of his case in chief. (*People v. King* (1978), 61 Ill. App. 3d 49.) The admission of rebuttal testimony is left to the discretion of the trial judge and a court of review will not interfere with the exercise of that discretion absent an abuse of discretion which results in substantial prejudice to the defendant. (*People v. Gentry* (1974), 19 Ill. App. 3d 861.) The record indicates that on direct examination, the defendant testified that, at the time of his arrest, he asked a police officer, "Why am I being arrested?" On cross-examination, the defendant specified that he directed this question towards the officer who was patting him down. During rebuttal, the State called Officer Hernandez who testified the defendant said nothing. This testimony was offered to refute the defendant's exculpatory assertion that he did not know why he was being arrested. The extent to which the defendant was prejudiced by Officer Hernandez's testimony is only the extent to which a defendant's credibility is always diminished by contrary testimony. We find that the defendant was not substantially prejudiced and that the testimony was proper rebuttal evidence.

██ We next address defendant's claim that the trial court erred in refusing to instruct the jury on the second paragraph of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed. 1971), which states:

> "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

The second paragraph of the instruction is to be given in those cases where the State's case is entirely circumstantial.

In the present case the State argues that its case contains both direct and circumstantial evidence while defendant contends that the evidence was entirely circumstantial. The evidence in this case was not entirely circumstantial. The testimony of Beverly Koerner and John Koerner provided direct evidence that the defendant used an alias and performed acts which aided and abetted George Brigham prior to the time that Brigham forged the documents in question.

■ Defendant also contends that the court committed error when it allowed IPI Criminal 2d No. 5.03, which reads as follows:

> "A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense."

The defendant's proposed instruction modified IPI Criminal 2d No. 5.03 to conform to the language of his information, by deleting the words "solicits, abets, agrees to aid, or attempts to aid." It is the defendant's contention that by giving the unmodified instruction the court broadened the scope of the defendant's charged offenses.

An Illinois Pattern Jury Instruction should be used in criminal cases unless it does not accurately state the law. (87 Ill. 2d R. 451.) IPI Criminal 2d No. 5.03 is a correct statement of the law of accountability. We fail to see how the inclusion of "solicits, aids, abets, agrees to aid, or attempts to aid" broadened the scope of defendant's liability. The defendant was charged on an accountability theory and the evidence established the defendant's guilt under an accountability theory. Thus, the trial judge properly instructed the jury.

■ The defendant's fifth assertion is that during closing argument the prosecutor made a deliberate attempt to confuse the jury with respect to the law of accountability when he made the following statement:

> "The evidence shows, ladies and gentlemen, that the defendant aided George Brigham in the commission of these offenses. He aided him by being with him, by adding his silent assent to the commission of these crimes, adding his support, lent his countenance-"

The defendant objected at this point, whereupon, without a ruling on the objection, the assistant State's Attorney continued:

> "Judge, the law is quite clear that someone can, without par-

ticipating in an overt act, aid and abet someone merely by assenting to the crime and lending their countenance to it. There are numerous cases where someone who has attached themselves to a group or to someone committing the crime has been found guilty of the crime based on accountability, based on the fact that they lent their countenance to this person doing that. That is a correct statement of the law, and there is numerous cases."

After carefully reviewing the court's instruction to the jury, we find that if there was any misstatement it was cured by the trial judge. Improper closing arguments which misstate the law of accountability may be cured by giving a proper jury instruction on the law of accountability. *People v. Terry* (1984), 99 Ill. 2d 508.

■ Finally, the defendant argues that the trial court should not have allowed a cross-examination of the defendant concerning his occupation as an attorney and his educational background. The defendant testified that he knew George Brigham for a period of 15 years. During that period, the defendant was an attorney and a bank vice-president, responsible for the issuance of loans. The evidence adduced with respect to the defendant's educational and occupational background on cross-examination was designed to cast doubt upon the defendant's assertion that Brigham never requested assistance in filling out the loan application and that he never bothered to look over the forms his friend was signing. Thus, this line of questioning was relevant and material as regards the general credibility of the defendant. Accordingly, the trial court properly allowed cross-examination of the defendant.

For the foregoing reasons we affirm the defendant's conviction.

Affirmed.

BARRY, J., concurs.

JUSTICE STOUDER, dissenting:

I respectfully disagree with the reasoning set forth by my colleagues supporting their conclusion that no reversible trial error occurred below. With respect to the circumstantial evidence instruction, IPI Criminal 2d No. 3.02, it is my opinion the full instruction should have been given. In view of the difficulties in determining what evidence is direct and what evidence is circumstantial, there continues to be no criteria for determining whether the instruction should or should not be given in full. My views on this recurring problem have

been amply set forth in my special opinions in *People v. Minish* (1974), 19 Ill. App. 3d 603, 312 N.E.2d 49, *People v. Fletcher* (1976), 40 Ill. App. 3d 537, 352 N.E.2d 10, and *People v. Godsey* (1978), 57 Ill. App. 3d 364, 373 N.E.2d 95, and need not be entirely restated once again here. Furthermore, in light of the decision in *People v. Crow* (1985), 108 Ill. 2d 520, 485 N.E.2d 381, I believe this case should be remanded to the trial court for a new trial.

In *Crow*, the court made two findings. First, the court ruled that the evidence presented by the State, including testimony by an expert witness that the decedent died from a gunshot wound, which was not self-inflicted, was not direct evidence of murder, and the defendant was therefore entitled to the full circumstantial evidence instruction. Second, the court ruled that the trial court's failure to so give the instruction was not harmless beyond a reasonable doubt. The matter was reversed and remanded to the trial court for further proceedings. The court's reversal was based solely on the trial court's failure to give the full instruction. Such a decision discloses the continued viability of giving the instruction.

In the present case, my colleagues have suggested the telephone calls purported to have been made by the defendant constitute direct evidence. My concern is direct evidence of what? Certainly, these calls do not constitute direct evidence the crime of forgery was committed. Similarly, I do not believe the calls constitute direct evidence of the crime under an accountability theory. The defendant could have used any name and made the telephone calls, and yet this was not direct evidence of any element of an offense. The trier of fact should have been given the full instruction. The jury then could have either inferred from the calls, assuming their belief defendant made the calls, that he was accountable, or that every theory of innocence was not excluded. The court's failure to so instruct the jury was not harmless. Considering the evidence in its entirety, had the instruction been given in full the verdict may have been different.

While I would reverse on this basis alone, several other instances of trial error lend additional support for such a conclusion. My colleagues have suggested that because IPI Criminal 2d No. 5.03 is a correct statement of the law of accountability, it was not error to so instruct the jury even though the instruction was not a correct restatement of the charging information. I disagree. In the present case, the statute on accountability is much broader than the offense charged, and I do not believe the trial court was free to rule that the words contained in the statute are synonymous. They are not! As long as the charging information contained only one accountability theory,

the jury instruction should have been given for only that theory. The confusion and prejudice engendered by giving the instruction was heightened because the prosecution in its final argument repeated the statutory definition in an effort to "instruct" the jury on the law. The prosecution did so in the context of intimating that a crime was committed by mere presence or negative acquiescence.

I also believe the defendant was prejudiced by the prosecutor's misstatement of the law of accountability in the jury's presence. I disagree with the majority that such misstatement was cured by the trial judge giving the jury the accountability instruction. Since I believe the instruction as given was improper, it could in no way cure the error. Furthermore, the trial judge should have admonished the jury to disregard the argument which followed defendant's objection. (See *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367.) In light of the misstatement, the incorrect jury instruction, and the court's failure to admonish the jury to disregard the improper argument, the error is not inconsequential and calls for reversal.

The question of the guilt of the defendant on the evidence was exceedingly close, and it was of the utmost importance that no error in regard to any material feature of the case should intervene. I believe the combined effect of the errors herein, viewed individually and collectively, was sufficiently prejudicial so as to deprive the defendant of a fair trial. Reversal and remandment for a new trial are justified and required.