(No. 33396.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH PALUMBO, Plaintiff in Error.

*Opinion filed February 16, 1955—Rehearing denied April 15, 1955.*

JULIUS LUCIUS ECHELES, and FRANK W. OLIVER, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, RUDOLPH L. JANEGA, JOSEPH M. WOSIK, and LESTER SHAPIRO, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

By this writ of error the defendant, Joseph Palumbo, seeks to reverse a judgment of the criminal court of Cook County which found him guilty of selling narcotics and sentenced him to imprisonment in the penitentiary for a term of not less than two nor more than fifteen years.

Defendant and his wife were jointly indicted. He obtained a severance, and waived a trial by jury. The testimony established without contradiction that on the morning of October 18, 1953, the mother of the principal wit-

ness for the People, one Nick Martello, summoned police officers to her home and complained that her son was using narcotics. The officers woke up Martello, searched his clothing, gave him five marked $1 bills and drove him to the defendant's home, where he was admitted through the back door. There he bought heroin for which he paid the five $1 bills.

Defendant's first contention, that the evidence does not establish his guilt beyond a reasonable doubt, is based upon certain discrepancies between the testimony of Martello and that of defendant's wife as to what occurred inside defendant's home. Martello testified that defendant's wife, Christine, answered the door and let him into the kitchen; that defendant was in that room and was standing about four feet away when the witness asked Christine if she had any heroin. Christine and the witness walked into the bedroom, where she picked up a package from the dresser and handed it to him. The defendant also walked into the bedroom and asked the witness for the money, and the witness gave him the five $1 bills. Defendant then looked out the window, saw the police officers, drew a gun, threatened to kill the witness if he told anything, and then put him out the front door.

Christine Palumbo testified that the defendant admitted Martello; that Martello asked defendant "if he had any stuff" and defendant said, "Yes." She then testified to the following conversation between herself and her husband: "Joe said, 'Chris, go into the bedroom, on the dresser and get the package of narcotics.' I said, 'Why don't you go and get it yourself' and he said, 'Well, you are closer to it, hand it to him.' " She testified further that she went into the bedroom, got the package lying on the dresser and handed it to the defendant, and that no one went into the bedroom with her. She also testified that the defendant handed the package to Martello and that Martello gave defendant five $1 bills. Her testimony as to defendant's

seeing the police officers, drawing a gun and threatening to kill Martello accords with Martello's.

Defendant testified in his own behalf that although he was in the kitchen he did not hear the conversation between Martello and his wife or know what occurred between them. He testified that Martello had been coming there quite often and. "I had been in trouble with his kind before and I just told him to leave the house. I was on five years' probation for violating the Narcotic Laws, and I did not want to take any chances. I was placed on probation on June 9, 1952. Since June 9, 1952, I voluntarily went to the United States Public Health Hospital in Lexington, Kentucky, and I was released from the hospital on May 1 or May 2, 1953. I was at the hospital for treatment as a narcotic addict." He denied that he saw any police officers, used a gun or threatened Martello.

Martello and Christine Palumbo differed as to who admitted Martello, to whom he addressed his request for narcotics, and who gave him the package of heroin. Both witnesses, however, agreed that defendant was present when Martello asked for the heroin and when it was delivered to him, that defendant asked for and received the purchase price, and that he threatened to kill Martello if he told of the transaction. This proof was sufficient to establish defendant's guilt beyond a reasonable doubt, regardless of other discrepancies. Credibility of the witnesses rested with the trial court.

Defendant next contends that the court erred when it permitted defendant's wife to testify against her husband in violation of section 6 of division XIII of the Criminal Code. (Ill. Rev. Stat. 1953, chap. 38, par. 734.) Determination of this issue requires an analysis of the statute in question against the background of the common law and earlier statutory provisions. With limited exceptions not here pertinent, husband and wife were incompetent to testify for or against each other at common law. The disqualifica-

tion was rested in part upon their interest, in part upon the common-law notion of unity of husband and wife, and in part upon a desire to promote domestic tranquility. (1 Blackstone, p. 443; II Wigmore, Evidence, sec. 601 (2d ed.).) At the same time there existed in all actions a privilege which protected confidential communications made between husband and wife during coverture. VIII Wigmore, Evidence, secs. 2332-2335 (3d ed.)

In this State the matter has been governed by the Evidence Act. Section 1 of that act eliminated disqualification of witnesses by reason of interest, and provided that interest should go to the credibility rather than the competence of the witness. (Ill. Rev. Stat. 1953, chap. 51, par. 1.) Until 1935, section 5 provided that nothing in section 1 should render husband or wife competent to testify against the other as to any transactions or conversations occurring during the marriage except in certain specifically enumerated instances. It also contained the following proviso: "Provided, that nothing in this section contained shall be construed to authorize or permit any such husband or wife to testify to any admissions or conversations of the other, whether made by him to her or by her to him, or by either to third persons, except in suits or causes between such husband and wife." Smith-Hurd Stat. 1933, chap. 51, par. 5.

In *Funk* v. *United States,* 290 U.S. 371, decided in 1933, the United States Supreme Court appraised the basis for the common-law rule of disqualification of husbands and wives in the light of experience and of present conditions, and concluded that the disqualification could not "be any longer justified, if it ever was justified, on any ground of policy." (290 U.S. 371, 381.) In 1935, on the basis of the decision in the *Funk case,* it was urged that this court should also re-examine the common-law rule of disqualification. The court refused to do so, pointing out that the legislature had made certain changes with respect to the testimony of husbands and wives, "and it doubtless

will from time to time make such further changes as may be thought best. We leave this matter to that branch of the State government and hold that the trial court did not err in excluding the wife's testimony." *People* v. *Kendall*, 357 Ill. 448, 456.

The legislature responded promptly to this suggestion. In 1935 it amended section 5 of the Evidence Act, and in 1937 it amended section 6 of division XIII of the Criminal Code. The two provisions are substantially the same. The portion of section 6 of division XIII of the Criminal Code with which we are here concerned is as follows: "In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during coverture, * * *." Ill. Rev. Stat. 1953, chap. 38, par. 734; *cf.* chap. 51, par. 5.

Read against their historical background, it is clear that these statutory changes were intended to eliminate the common-law disqualification of husband and wife, and to leave only the common-law privilege relating to communications between them. The broad contention which the defendant has asserted thus narrows down to a question of the admissibility of the wife's testimony concerning her conversation with her husband which is set forth above. According to her testimony, that conversation took place in the presence and hearing of Martello; it was therefore not intended as a confidential communication. The common-law privilege with respect to communications between husband and wife, like that with respect to communications between attorney and client, was limited to confidential communications. "Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but wherever a communication, because of its nature or the circumstances under which it was made, was obviously

not intended to be confidential it is not a privileged communication. See *Caldwell* v. *The State,* 146 Ala. 141; 41 So. 473; *Parkhurst* v. *Berdell,* 100 N.Y. 386, 393; 18 N.E. 123; *Truelsch* v. *Miller,* 186 Wis. 239, 249; 202 N.W. 352. And, when made in the presence of a third party, such communications are usually regarded as not privileged because not made in confidence." *Wolfle* v. *United States,* 291 U.S. 7, 14; VIII Wigmore, Evidence, sec. 2336 (3d ed.); Note, 30 Ill. L. Rev. 783.

It is suggested that the present statute is not so qualified but refers to "any communication," and "any conversation," and that the common-law requirement that the communication be confidential has thus been eliminated. We do not so read the statute. Under the earlier provision, with its reference to "admissions or conversations * * * by either to third persons," the confidential character of the common-law privilege was indeed eliminated, and the scope of the common-law privilege was substantially broadened. In the present statute, however, the reference to third persons has been omitted. Statutory expressions of the common-law privilege similarly stated in terms of "any communication," have frequently been construed to include only the common-law privilege covering confidential communications. (*New York Life Insurance Co.* v. *Mason,* C.C.A. 9, 272 Fed. 28; *Sexton* v. *Sexton,* 129 Iowa, 487, 105 N.W. 314; *Moseley* v. *Eakin,* 15 Rich. 324 (S.C.); *In re Ford's Estate,* 17 Utah, 456, 261 Pac. 15; *Sackman* v. *Thomas,* 24 Wash. 660, 64 Pac. 819.) That appears to have been one of the purposes of the change in the statute, and we therefore hold that the evidence was properly admitted.

The circumstances that give rise to the contention that the court erred in permitting the attorney for the defendant's wife to participate in the trial and in permitting the State's Attorney to instruct her regarding her testimony are as follows: When Mrs. Palumbo took the stand the

court stated that he would like to have her attorney in court while she was on the witness stand. The assistant State's Attorney then stated that her attorney was willing to have her testify and that there was no understanding of any kind as to any consideration to be given to her by reason of her testimony, and that no promises had been made to her by the State's Attorney. When the witness's attorney entered the court room a moment later he repeated the statement that the witness had been promised nothing by the State's Attorney and stated that he had directed her as her attorney to testify and tell the truth. After the witness had been sworn and had stated her name and the fact that she was the wife of the defendant, the defendant objected to any further testimony upon the ground that she was incompetent to testify against her husband. At that moment her attorney said, "Now, if the court please—" whereupon the court interrupted and directed that the State answer the objection. In these circumstances we see no error prejudicial to the defendant.

The defendant's final contention is that the State failed to make a *prima facie* case because it did not prove that the substance which was sold to Martello contained more than one-eighth of a grain of heroin. In this connection defendant relies upon section 8 of the Uniform Narcotic Drug Act. (Ill. Rev. Stat. 1953, chap. 38, par. 192.8.) That section exempts certain preparations from the provisions of the act which prohibit the sale of narcotics without prescription. The portion of the section here relied upon is as follows: "Except as otherwise in this Act specifically provided, this Act shall not apply to the following cases: (1) Prescribing, administering, dispensing or selling at retail of any medicinal preparation that contains * * * not more than one-eighth of a grain of heroin * * *." The testimony of the police department chemist was that the actual amount of heroin in the package sold to Martello was "the equivalent of ⅛ of a grain."

Defendant's contention cannot be sustained. There is no suggestion in this record that the substance sold was a "medicinal preparation." Section 21 of the Uniform Narcotic Drug Act provides that in any proceeding for the enforcement of the act "it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this act and the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant." Ill. Rev. Stat. 1953, chap. 38, par. 192.21.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*