(No. 48813.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JACK CANNON SIMPSON, Appellee.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

WARD, C.J., and GOLDENHERSH and DOOLEY, JJ., dissenting.

William J. Scott, Attorney General, and C. Joseph Cavanagh, State's Attorney, both of Springfield (James B. Zagel, Jayne Carr, Donald B. Mackay and Raymond McKoski, Assistant Attorneys General, of Chicago, and Robert C. Perry, G. Michael Prall, and Marc D. Towler, of the Illinois State's Attorneys Association Prosecutor's Appellate Service, of Springfield, of counsel), for the People.

Richard J. Wilson, Deputy Defender, Robert E.

Davison, and Daniel D. Yuhas, Assistant Defender, of the Office of State Appellate Defender, of Springfield, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

In a jury trial in Sangamon County circuit court, the defendant was convicted of murdering his paramour, Gwen Ellen Woods, in the early hours of October 30, 1972. The appellate court (39 Ill. App. 3d 661) reversed the conviction and remanded the case for a new trial because it deemed privileged a marital conversation testified to at trial (Ill. Rev. Stat. 1971, ch. 38, par. 155—1).

Sometime after midnight on October 30, the defendant and the victim were seen together at a tavern. They were later seen quarreling by the side of a road. A police officer stopped to talk to them, told the defendant to take Gwen home, and, in his car, followed the couple for a short period of time. Still later, defendant arrived at the trailer of his estranged wife, Ann Simpson. (Their divorce was in process.) His hair was messed and his knuckles abraded; he had a deep, bloody gash over the bridge of his nose, blood stains on the elbows of his shirt, and briars and thick mud on his pants and boots. He seemed very disturbed. He was carrying a woman's purse, which he emptied onto the bed. A necklace fell out. His wife recognized the purse and necklace as belonging to the decedent. The defendant put on a fresh pair of pants identical to those he had been wearing. He gave Ann the keys to his car. She retrieved a can of gasoline from the vehicle, saturated the muddy pants with the gasoline, put them in the incinerator and set them on fire. The defendant added to the fire a bundle, the size of a pillow, wrapped in the vest he had been wearing. He repeatedly stoked the fire and, as articles fell out, put them back in.

The victim's body was subsequently found beneath a bridge a short distance from her abandoned car. The cause of her death was a gunshot wound to the head. (A more complete statement of the facts may be found in the appellate court's opinion.)

During the case in chief, Assistant State's Attorney Kasten stated that he and two deputy sheriffs interviewed defendant at the jail. He testified:

> "We had been questioning the defendant, and Mrs. Simpson came into the room and sat down in a chair. I was sitting on the desk and the others were sitting on chairs, and either Mr. Price or Mr. Brown, I don't remember which one, said, 'Now, Ann, tell us what he told you;' and she said that he came to the trailer on the morning in question and said that he had shot Gwen and the defendant then spoke up and said, *'Yes, but I told you later I was lying.'* " (Emphasis added.)

Clearly, the inference to be drawn from defendant's word, "Yes," in the context of the words that follow, is "Yes, I did previously tell you I shot Gwen."

Prior to trial, the court had ruled that Mrs. Simpson herself could not testify to the conversation in the trailer but Kasten could testify as to defendant's admission, made in Kasten's presence, that he (defendant) had earlier told his wife he had shot Gwen. No attempt was made at trial to have Ann Simpson testify regarding the conversation in the trailer, and the above statement by Kasten was the extent of the inquiry in that regard.

Section 6 of the Criminal Code of 1874 (Ill. Rev. Stat. 1971, ch. 38, par. 155—1) provides in pertinent part:

> "In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during coverture ***."

The applicable statutory provision has been interpreted by this court to allow a spouse's testimony except as to

confidential communications between husband and wife. Communications in the presence and hearing of a third party are generally not considered to be confidential communications within that privilege. (*People v. Palumbo* (1955), 5 Ill. 2d 409, 414-15.) It is likewise apparent that one in whose presence a communication between spouses is made may testify to that conversation, even though the witness overheard the conversation by eavesdropping. Similarly, one may testify who learns the contents of a written communication from one spouse to another by interception, or through loss or misdelivery by the custodian. McCormick, Evidence sec. 82, at 167 (2d ed. 1972).

The appellate court found it was reversible error for the trial court to have permitted Kasten to testify to the jailhouse confrontation by Mrs. Simpson and to defendant's response. The court relied on an exception to the above rule, concluding, "The privilege is not destroyed if the contents of the communication be learned by others as a result of the betrayal or connivance of the spouse to whom the communication was made. (See McCormick on Evidence 167, 168 (2d ed. 1972) and cases there cited.)" (39 Ill. App. 3d 661, 670.) We believe that the appellate court's reliance on the betrayal exception is misplaced. That exception, as set forth in McCormick, provides:

> "[T]he privilege will not be lost if the *eavesdropping,* or the *delivery or disclosure of the letter* be due to the betrayal or connivance of the spouse to whom the message is directed." (Emphasis added.) (Footnotes omitted.) McCormick, Evidence sec. 82, at 168 (2d ed. 1972).

Neither a written communication obtained through the connivance of the spouse, nor oral communication overheard by eavesdropping (by connivance or otherwise) is involved herein. An examination of the cases cited in McCormick—and relied upon by the appellate court to

support the betrayal exception—reveals their inapplicability to the facts of this case. They all involve the attempted introduction of a marital communication which had merely been revealed, through no conscious act of the protesting spouse, to a third party. No case is cited to us that would uphold the privilege where the very holder of that privilege consciously, and by his own act, reveals or confirms to third parties the content of a prior privileged communication. (*Cf. De Leon v. Territory* (1905), 9 Ariz. 161, 80 P. 348, which held that the contents of a letter written by a prisoner to his wife with the knowledge that, by rule of the prison, the jailor is required to open and examine the letter, may be testified to by the jailor, even though the wife could not so testify or be compelled to produce the letter.)

The betrayal exception is further inapplicable because of the defendant's own subsequent public admission. Indeed, it is specifically stated that "a voluntary revelation by the holder [of the privilege] of the communication, or of a material part, is a waiver." McCormick, Evidence sec. 83, at 170 (2d ed. 1972).

The appellate court felt that to permit Kasten to give the above testimony was contrary to the purpose of the statute. The gist of that court's concern was that the State could not do indirectly that which it was forbidden to do directly. That court's analysis, however, does not give appropriate effect to the defendant's oral response to the so-called "betrayal." Defendant's prior statement was not rendered admissible by the fact that his wife revealed it to the State while in defendant's presence. (This is conceded by the State and was so held by the trial court.) Rather, it is the defendant's own public reply to his wife's statement which rendered admissible Kasten's account of the police station confrontation, for, by his reply, defendant admitted making the prior statement. The defendant did not have to make such an acknowledgment. There is no

suggestion that he was coerced. When confronted by his prior, privileged statement in the trailer he could have remained silent or denied having made such a statement. Under those circumstances, the privilege of the communication in the trailer would, no doubt, have been preserved, despite his wife's revelation of that conversation to the police. Irrespective, however, of the facts that he was in the midst of a lengthy custodial interrogation regarding the murder and in the known presence of three officers of the State, he acknowledged having said he shot Gwen. His statement cannot under these circumstances be deemed to have been a confidential communication. (*People v. Palumbo* (1955), 5 Ill. 2d 409, 414-15; 81 Am. Jur. 2d *Witnesses* sec. 155, at 194-95 (1976).) (The contrary Illinois case cited in footnote 14 of section 155 (*Mahlstedt v. Ideal Lighting Co.* (1915), 271 Ill. 154) is inapplicable as dealing with a wife's incompetence to testify under prior law, as distinguished from a third person's ability to testify to marital conversations had in his presence.)

The defendant argues that the wife's reference to the statement made in the trailer, as reported by Kasten, is excludable as hearsay. The State correctly points out that extrajudicial admissions made by a party opponent are not excludable as hearsay. (*People v. Newbury* (1972), 53 Ill. 2d 228, 234; McCormick, Evidence sec. 262, at 628 *et seq.* Compare Fed. R. Evid. 801(d)(2) with Fed. R. Evid. 804(b)(3).) The admission here was not that defendant shot Gwen, but that he had previously told his wife he had. We deem it clear that Kasten's report of the wife's police station statement was admissible to explain the bare words of defendant's public admission, "Yes." Her statement gave meaning to the defendant's otherwise incomprehensible statement above, and merely revealed what the defendant thereby admitted to having said. See *Gannon v. People* (1889), 127 Ill. 507, 517-18.

Because there was no attempt to have the State's

Attorney or the defendant's wife go further into the conversation, we deem it unnecessary for the purposes of this appeal to determine whether the defendant's public admission waived the marital privilege with regard to the entire conversation in the trailer on the night in question.

The defendant urges that, even if this court should reverse the appellate court, he should not be denied a retrial for to do so would effectively deprive him of his right to confront witnesses and his right to due process. The trial court had ruled that Ann Simpson could not testify to the privileged conversation which took place in the trailer. Yet, defendant argues, the trial court, in a seeming inconsistency, permitted Kasten to reveal her police station recital of that conversation. Thus, defendant was faced with a choice. He could examine Ann Simpson regarding the circumstances of the trailer conversation, thereby clearly waiving a privilege which constituted a substantial portion of his case. Alternatively, he could forgo the examination of Mrs. Simpson, relying, as he did, on the trial court's pretrial ruling that the conversation was privileged. The defendant argues that because Kasten was permitted to testify regarding it, defendant was, in effect, denied the opportunity for full and effective cross-examination of Ann Simpson. We believe that the defendant's argument is without merit.

The pretrial proceedings herein clearly established not only that Mrs. Simpson would not be allowed to testify regarding that conversation, but that the State's Attorney *would* be allowed to testify regarding the police station conversation. There was no unfair surprise in this regard. There was no deprivation of constitutional right occasioned by the fact that the defendant was put in the difficult position of insuring that he did not impair the marital privilege to any extent greater than he had already done in the police station.

For the above reasons, the judgment of the appellate

court is reversed and the cause is remanded to that court for consideration of those issues raised but not reached by its original decision.

*Reversed and remanded,*
*with directions.*

MR. CHIEF JUSTICE WARD, dissenting:

I judge from a realistic appraisal of the circumstances here that the defendant's wife, by prearrangement with the law enforcement officers, entered the room where the defendant was being questioned by an assistant State's Attorney and two deputy sheriffs. One of the questioners then told Mrs. Simpson to state what the defendant had said to her about the killing. Mrs. Simpson stated that the defendant had told her he had shot Gwen, and very predictably the defendant responded to that statement. The prosecution and the majority say that this reply constituted a voluntary waiver of the privilege by the defendant. I consider that under the circumstances the defendant's reaction to his wife's statement before the officers who were questioning him cannot be considered a waiver. A waiver, of course, to be valid, must be voluntary and with understanding of what is being waived. There is no showing of understanding by the defendant of the privilege the majority holds that he waived. Beyond that, it is clear to me that the defendant's response was secured through deliberate provocation or incitement. Under the circumstances here I think this was improper, not as a matter of punctilio but because the ruse practiced made the privilege meaningless.

MR. JUSTICE GOLDENHERSH, also dissenting:

The rationale of the majority opinion holding the testimony of the assistant State's Attorney admissible is that defendant's wife's "police station statement was admissible to explain the bare words of defendant's public

admission, 'Yes.' Her statement gave meaning to the defendant's otherwise incomprehensible statement above, and merely revealed what the defendant thereby admitted to having said." (68 Ill. 2d at 282.) The statute proscribes testimony of any communication or admission made by either party to the marriage to the other, and the device used here should not serve to render a wife's statement admissible under the guise of explaining an "otherwise incomprehensible statement." The authorities cited in the opinion do not support the majority's position, and *Gannon v. People,* 127 Ill. 507, cited in support of the specific holding, is so clearly distinguishable that no further comment is required.

The majority, relying on McCormick (McCormick, Evidence sec. 83, at 170 (2d ed. 1972)), holds that defendant's so-called admission was a voluntary revelation of a material part of the communication and was therefore a waiver. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." (*Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023.) I fail to see how on this record defendant's response to a statement elicited by a deputy sheriff in the presence of an assistant State's Attorney who should have been aware of defendant's statutory privilege can be construed to be a voluntary waiver of that privilege.

Assuming, *arguendo,* that the testimony were in some manner rendered admissible, it should nevertheless have been excluded. There are many situations in which the admissibility of evidence depends upon whether its probative value outweighs its prejudicial effect to the defendant. (*People v. Lefler,* 38 Ill. 2d 216; *People v. DeHoyos,* 64 Ill. 2d. 128.) In *People v. Jordan,* 292 Ill. 514, testimony concerning a statement by the defendant's wife was admitted on the ground that the statement was made in his presence and that the defendant's silence at the time was

an express or implied ratification of the statement. In reversing the judgment the court said: "The fatal objection to this evidence is that it brought before the jury a statement of a witness who was not competent to testify to the fact and in defiance of an express statutory provision. The defendant's wife was neither competent to testify in his behalf nor against him, and when offered as a witness by the defendant she was properly excluded upon the objection of the People. (*Miner v. People,* 58 Ill. 59; *Gillespie v. People,* 176 id. 238.) Inevitably the jury would take the testimony that she made the statement as evidence of the fact." 292 Ill. 514, 517.

The admission of the assistant State's Attorney's testimony was, in my opinion, so prejudicial to the defendant as to require reversal and remandment for a new trial.

MR. JUSTICE DOOLEY, also dissenting:

I join in the very persuasive opinions of Mr. Chief Justice Ward and Mr. Justice Goldenhersh. There was no voluntary waiver of a substantial right by the defendant. This error is of such consequence as to justify a new trial, absent such cunning stratagems as were employed here.