THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOHN DUBANOWSKI, Defendant-Appellee.

First District (3rd Division)   No. 78-1378

Opinion filed August 22, 1979.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Iris E. Sholder, Assistant State's Attorneys, and Elizabeth Jacob Cohen, law student, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, John Dubanowski, was charged with the murder of his mother. The trial court granted defendant's motions to suppress wiretap recordings of a conversation with his wife in which he admitted the killing and to bar the use of the recordings or of testimony as to their contents at trial. Pursuant to Supreme Court Rule 604(a)(1), the State appeals. It contends that the trial court incorrectly applied the marital privilege to exclude admissions made by defendant to his wife.

On August 24, 1976, defendant and his wife, Fern Dubanowski, were separated. On that day, Fern informed an officer of the Chicago Police Department that defendant wished to meet her. She believed that at the meeting he was going to admit killing his mother. The wife signed a consent form for the use of a wiretapping device by the police department; the State's Attorney approved its use; and a judge authorized it.

The eavesdropping device was installed on Fern's person. At a meeting in a restaurant on August 26, 1976, defendant told his wife he had killed his mother. He also informed her she could have the $5,000 he inherited from his mother if she would "come back to live with him."

The parties separated in August 1975, reconciled, and again separated in February 1976. Fern filed for divorce in April 1976 and obtained a default decree of divorce in June 1976. The decree was vacated on July 1, 1976, but the parties remained separated.

On August 27, 1976, defendant was indicted for the murder of his mother. The indictment was based upon the recorded conversation between defendant and his wife.

The Illinois marital privilege statute applicable to the matter, provides:

"In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any

communication or admission made by either of them to the other or as to any conversation between them during coverture, except in cases where either is charged with an offense against the person or property of the other, or in case of wife abandonment, or where the interests of their child or children are directly involved, or as to matters in which either has acted as agent of the other." Ill. Rev. Stat. 1975, ch. 38, par. 155—1.

The State contends that the term "coverture" employed in the statute means a unity of economic interest, and that defendant, to qualify for the marital privilege, must not only show marriage but also must demonstrate a unity of economic interest with his wife. In support of its theory, the State points to the fact that since the communication in the present case occurred, the legislature has amended the statute by substituting the word "marriage" for "coverture."

■■ We note that the recent amendment to the marital privilege statute was enacted under legislation relating to sex discrimination in criminal law. At the same time the legislature substituted the word "marriage" for "coverture," it altered the statute by changing the phrase "wife abandonment" to "spouse abandonment." It is obvious that the legislature was merely eliminating archaic language and possible sex discrimination in replacing the term "coverture" with "marriage." This is especially evident because the term "coverture" referred only to matrimony of the woman. (See *Osborn v. Horine* (1857), 19 Ill. 124.) It is likewise clear that the marital privilege has always been predicated upon the concept of marriage, rather than upon any unity of economic interest. In discussing the privilege, our supreme court has always emphasized only the marriage and the need of confidential communications between husband and wife. (*People v. Simpson* (1977), 68 Ill. 2d 276, 369 N.E.2d 1248; *People v. Palumbo* (1955), 5 Ill. 2d 409, 125 N.E.2d 518; *People v. Kendall* (1934), 357 Ill. 448, 192 N.E. 378.) Under the marital privilege statute, the terms marriage and coverture are synonymous.

■■ It has also been held that the marital privilege remains in effect as to confidential communications even though the parties are separated as long as they are not divorced. In *People v. Simpson* (1976), 39 Ill. App. 3d 661, 350 N.E.2d 517, *rev'd* (1977), 68 Ill. 2d 276, 369 N.E.2d 1248, both courts assumed that the marital privilege applied to communications between spouses who were legally separated and whose divorce was in progress at the time of the communication. In *Simpson*, defendant, after killing his girl friend, went to the residence of his estranged wife. He admitted the killing to her, and she assisted him in cleaning and disposing of his bloodstained clothing. Subsequently, the wife, in defendant's presence, told the police that defendant had admitted the killing to her. Defendant immediately responded that he had so stated to his wife, but

he later told her he was lying. This court ruled that the conversation repeated by the wife was a confidential communication within the purview of the statute. The supreme court reversed the holding on the grounds that defendant, by replying to the wife's statement to the authorities, waived the marital privilege. The supreme court, however, accepted the principle that the marital privilege applied even though the parties were estranged and in the process of getting a divorce. Since the parties in the present case were legally married to each other at the time of the confidential communication in question, the marital privilege was in effect.

■■ The trial court properly ruled that the police officers who overheard the conversation by means of the eavesdropping device attached to defendant's wife were also precluded by the privilege from testifying to the contents of the conversation. In *Simpson,* this court, using language pertinent to the present case, stated at page 670: "The privilege is not destroyed if the contents of the communication be learned by others as a result of the betrayal or connivance of the spouse to whom the communication was made. (See McCormick on Evidence 167, 168 (2nd ed. 1972) and cases there cited.)"

■■ The State also contends that defendant failed to prove that the conversations occurred as a result of the marriage relationship. It maintains that to qualify under the marital privilege, the conversations with Fern must have occurred because of some special quality inherent in the marital relationship. If such proof is necessary for the marital privilege to apply, it was certainly demonstrated in the present case. Defendant confessed the crime to his wife because he committed it in order to give her money and persuade her to return to him. The marriage relationship was the reason for the conversation. We conclude that the trial court correctly granted defendant's motions to suppress the testimony of his wife and of the police officers on the grounds that their testimony was precluded by defendant's assertion of the marital privilege.

Accordingly, the order of the circuit court of Cook County is affirmed.

Order affirmed.

McGILLICUDDY and RIZZI, JJ., concur.