THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LLOYD ROGERS, Defendant-Appellant.

Second District   No. 2—87—0826

Opinion filed January 13, 1989.

652

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Judith L. Libby, of State Appellate Defender's Office, both of Springfield, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant was found guilty of attempted murder (Ill. Rev. Stat. 1987, ch. 38, par. 8—4). The trial court entered judgment on the verdict and sentenced defendant to 20 years' imprisonment. Defendant appeals.

Defendant contends on appeal he was denied a fair trial because the trial court admitted evidence of a subsequent shooting at the victim's house and that he was denied a fair trial because of the State's closing argument. We affirm.

The victim, Michael Jones, was shot at on February 18, 1987, while driving his car. Jones testified that at approximately 7:30 p.m.

on February 18, 1987, he drove his father's yellow Cadillac to O'Donnell's store in Rockford with his friend, Clottie George, where he saw Keith Dainty in his beige car. In Dainty's car were Michael Glass, his brother Wayne (a/k/a Daniel) Glass, and an individual he later identified as defendant.

Jones testified that after he left O'Donnell's, he drove his friend home. Later, at approximately 8:15 or 8:30 p.m. as he drove around a local "dead man's curve," he saw Dainty's car approaching head-on, then turn around and follow him. As he turned left onto Preston Street, he slowed down to a stop. Dainty first pulled ahead of him on the driver's side and blew his horn for Jones to get out, which Jones declined to do. Dainty then pulled up beside Jones' car. According to Jones, Dainty was the driver, Wayne Glass was in the front seat on the passenger side, Michael Glass was behind the driver, and defendant was behind Wayne Glass. Jones was positive that he had seen the person who eventually shot at him earlier that night with Dainty at O'Donnell's. Jones wears glasses but was not wearing them on the night in question. Jones testified that from approximately three feet away, defendant fired a shot with a long .22 or .32 caliber revolver which shattered his rear driver's side window. Jones ducked. Next, Jones' front passenger side window was shot out as Dainty's car pulled up besides Jones. Jones could not see who fired the second shot. Jones drove off after the second shot at a high rate of speed down Preston Street, and Dainty's car followed. According to Jones, he was heading for his mother's house, where he lived at the time. However, because he was being closely followed, he went around the block. Eventually, he arrived home at about 9 p.m. or before.

Two days later, Jones identified defendant from a photo array as the shooter.

Keith Dainty testified next for the State in accordance with an agreement reached with the State. That agreement provided that charges of attempted murder and reckless conduct would be dropped in the instant case, probation would be revoked in another matter, and defendant would be sentenced to six months' work release for the revocation of probation. Dainty testified that he drove to O'Donnell's on the night in question with Wayne Glass, Michael Glass, and Frank (Pete) Jefferson. Dainty stated that defendant was not with them at this time. Dainty also testified that he did not see defendant that night at O'Donnell's. Dainty did state that he saw Jones at the store.

Dainty stated that he, the two Glass brothers, and Jefferson drove back to the house of Dainty's girlfriend's aunt, Juicy Glass. Defendant was among those present. Later that evening, Dainty was driving his

car, in which Michael Glass sat in the front passenger seat and Wayne Glass, defendant, and Jefferson sat in the rear.

When they saw Jones driving down a hill into "Dead Man's curve," defendant told Dainty to follow Jones, which Dainty did. Jones pulled over, and defendant told Dainty to pull his car next to Jones. Dainty complied and was approximately 15 feet from Jones' car. Dainty stated that he saw Michael Glass roll down his front passenger window while defendant pulled a gun and started shooting at Jones. Dainty saw Jones lie down in his car while defendant kept shooting. Dainty then started to drive away. Defendant asked Dainty why he drove away and stated "now we got to kill him." Defendant instructed Dainty to follow Jones, and, again, Dainty complied. Defendant kept shooting, using a long .22 caliber automatic pistol, as they followed Jones for approximately four blocks. Jefferson was screaming and lying down on the rear car floor.

Jefferson also testified for the State. Jefferson stated that one of the Glass brothers was in the front passenger side of Dainty's car and defendant, himself, and the other Glass brother were in the rear.

As Dainty was driving back to Juicy's house, Jefferson heard someone say, "[T]here he is," and Dainty tried to flag down a man driving a yellow Cadillac flashing his car lights. This man, subsequently identified as Jones, pulled his car over, as did Dainty. Jefferson heard someone say, "[D]uck, he might shoot," so Jefferson ducked and remained on the floor. Jefferson said defendant fired five or six rounds at the yellow Cadillac from a distance of approximately 5 to 10 feet away. Jefferson said Jones drove away, and Dainty pursued him for approximately four blocks. Jefferson was not charged with any crime in connection with this offense. Jefferson later identified defendant as the shooter from a photo array.

Neither of the Glass brothers testified.

The State further produced evidence that at approximately 9:30 p.m. on the same night, bullets were fired through the front closed house window where Jones lived with his parents, brother, and sister. Neither Jones nor his car was present then, but Jones' father and sister were. No one was injured. Police later retrieved two bullets from the interior of the house, and there was testimony that they were .22 caliber. Jones' sister stated that she heard a loud car muffler at the time of this shooting.

Dainty also testified regarding the subsequent shooting. He claimed he saw defendant and Wayne Glass later that night at approximately midnight at the house of Jones' wife (who did not reside with her husband). Dainty testified that Glass said, in defendant's pres-

ence, that Glass and defendant had just "shot up the house of Michael Jones' mother." Dainty added that defendant then warned Dainty not to "tell," or else "something bad will happen."

Defendant presented an alibi defense. Defendant stated that at approximately 6 p.m. on the night in question, he was at his apartment alone. He went upstairs and talked to his neighbor Dean Bell about his house being broken into. Bell and defendant then went down to defendant's apartment, where they fixed a broken window in defendant's apartment. They finished repairing the window between 6:50 and 6:55 p.m. After they fixed the window, Bell and defendant sat and talked for a while. According to defendant, Bell stayed at his apartment for about two hours. Bell left at about 7:30 or 8:30. Defendant stated that he left his apartment at about 8:45. He then went to the house of Juicy Glass. Present at Juicy Glass' were Juicy Glass, Carol Glass, and "several other girls with some kids." According to defendant, he arrived at Juicy Glass' at about 8:50 or 8:55 p.m. According to defendant, Michael Glass, Keith Dainty, and Jefferson arrived 15 to 20 minutes later. About 5 to 10 minutes later, defendant left with Wayne Glass. Defendant and Glass then went back to defendant's apartment for approximately five minutes. Defendant then drove Glass to Glass's house where defendant dropped Glass off at approximately 10 p.m. Defendant then went to a friend's house, where he arrived at approximately 10:10 p.m. He stayed there for approximately one hour, after which he went home. Defendant stated that he never reported the break-in of his apartment to the police.

Dean Bell testified that he did not specifically remember February 18 nor did he remember the exact date that defendant's apartment was broken into. He did, however, remember that defendant's apartment was broken into. Bell stated that about 5:15, 5:20, about the time the sun was getting ready to set, defendant asked him if he knew anything about defendant's window being broken. Bell stated they then got a piece of glass and put it in the window, which took about 45 minutes. He then talked to defendant for about two hours afterward. According to Bell, he left defendant at about 8 p.m, 8:30, or 9 p.m.

The jury returned a guilty verdict on attempted murder, and the trial court entered a judgment on the verdict. The court later sentenced defendant to 20 years' imprisonment.

Defendant initially contends that the trial court erred when it allowed the State to offer evidence of the subsequent shooting at the victim's mother's house. Defendant specifically contends that it was error to allow this testimony because there was no showing that

defendant committed the subsequent crime. This argument relies on defendant's next contention that the trial court improperly allowed testimony by Dainty that Wayne Glass stated that he and defendant had "just shot up Michael Jones [*sic*] mom's house."

■ We agree with defendant that absent Dainty's testimony, evidence of the subsequent crime would have been inadmissible. However, we disagree with defendant's contention that Dainty's testimony was inadmissible and therefore find that evidence of the subsequent crime was admissible.

■ Our supreme court has held that evidence of a subsequent crime is admissible to prove the intent of the defendant at the time of the crime charged. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 186; see also *People v. Bartall* (1983), 98 Ill. 2d 294, 312-14.) However, before another crime is admitted, it must be shown that the crime has a threshold similarity to the crime charged (*Bartall*, 98 Ill. 2d at 310) and it must also be shown that the defendant actually committed the other crime or participated in its commission (*People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 365).

In the instant case, Dainty testified that Glass stated that he and defendant had shot up Jones' mother's house and that defendant had warned Dainty not to tell anyone. There was also evidence that there was a loud muffler noise at the time of the shooting and that defendant drove a car with a loud muffler and evidence that both crimes were committed with a .22 caliber weapon. Absent Dainty's testimony, we would find that the evidence was insufficient to show that defendant committed the subsequent crime. We therefore move on to address defendant's contention that Dainty's testimony regarding the subsequent crime was inadmissible. Specifically, defendant contends that Dainty's testimony constituted hearsay which violated his sixth amendment right of confrontation. In response, the State initially contends that defendant's argument is waived because defendant only objected to the testimony on hearsay grounds. In the alternative, the State argues that the statement was admissible because it did not violate the confrontation clause, it was the statement of a coconspirator, and it contained an admission by defendant.

■ At the outset we note that the State's contention of waiver is entirely erroneous. The record clearly reveals that counsel for defendant objected to the testimony on both hearsay and the right to confrontation. The record also reveals that these same objections were again raised in defendant's motion for a new trial. We also note that a reply brief, had one been filed, could have effectively set the record straight on this point. It is unfortunate that when so many reply

briefs are no more than a rehash of the appellant's original brief, a reply brief was not filed where it could have served a purpose. Since the issue has not been waived, we proceed to the merits of the case.

■ The confrontation clause reflects a preference for face-to-face confrontation and the right of cross-examination. (*Ohio v. Roberts* (1980), 448 U.S. 56, 63, 65 L. Ed. 2d 597, 606, 100 S. Ct. 2531, 2537.) However, competing interests may warrant dispensing with the confrontation at trial. (448 U.S. at 64, 65 L. Ed. 2d at 606, 100 S. Ct. at 2538.) In *United States v. Inadi* (1986), 475 U.S. 387, 394-96, 89 L. Ed. 2d 390, 398-99, 106 S. Ct. 1121, 1126-27, the Court found that the confrontation clause did not prohibit a coconspirator's statement made in furtherance of the conspiracy from being admitted against a defendant. Thus, if, as the State argues, Glass's statement fell within the coconspirator's exception to the hearsay rule it would violate neither the hearsay rule nor the confrontation clause.

■ However, we find that in the instant case the statement of Glass does not fall within the coconspirator's exception. In order for the exception to apply, the statement must be made in furtherance of the conspiracy. (See *People v. Parmly* (1987), 117 Ill. 2d 386, 393.) In the instant case, Glass stated, "[T]hey just shot up Micheal Jones [*sic*] mom's house." It thus did not further the conspiracy in any way and, rather than covering it up, the statement, in fact, exposed the crime. We therefore find that Glass' statement, standing alone, was inadmissible as hearsay and as a violation of the confrontation clause. See 117 Ill. 2d at 393-95 (statements made after crime which did not attempt to conceal crime are not admissible under the coconspirator's exception).

■ ■ Nevertheless, we find that defendant's statement was an admission and therefore admissible. Extrajudicial admissions made by a defendant are not excludable as hearsay. (*People v. Simpson* (1977), 68 Ill. 2d 276, 282.) An admission is a statement from which guilt may be inferred, when taken in connection with other facts, but from which guilt does not necessarily follow. (*People v. Stewart* (1984), 105 Ill. 2d 22, 57.) In the instant case, we find that defendant's statement was an admission from which guilt could be inferred. Moreover, because defendant's statement was admissible, we find that Glass' statement was admissible to provide the context in which defendant's statement was made. See *Simpson*, 68 Ill. 2d at 282 (statement was admissible to explain the words of the defendant's public admission, "Yes"; statement gave meaning to the defendant's otherwise incomprehensible statement).

We next address defendant's contention that the subsequent

shooting should have been excluded because it did not evince an intent to kill on the part of defendant. Defendant argues that the evidence showed that the victim was not home at the time of the subsequent shooting and that the victim's car was also absent. Defendant argues that, at most, the evidence showed that defendant shot at a house not known to be occupied by the victim or any other person. Defendant also argues that evidence of the subsequent crime does not have any probative value concerning his earlier mental state. In support of his position, defendant cites *People v. Henry* (1971), 3 Ill. App. 3d 235, *People v. McChristian* (1974), 18 Ill. App. 3d 87, and *People v. Trinkle* (1976), 40 Ill. App. 3d 730.

In *Henry*, the court found that the evidence did not support a finding of attempted murder. (*Henry*, 3 Ill. App. 3d at 239.) There, the evidence showed that the defendant, who was an ex-marine with an expert rating in marksmanship, fired a hand gun as an unmarked police car approached. (3 Ill. App. 3d at 239.) The court found that the evidence was not clear as to whether the defendant actually shot at the police car, and the court was of the opinion that it was unlikely that the defendant would have missed the car had he aimed at it. (3 Ill. App. 3d at 239.) Accordingly, the court reversed the conviction.

In *McChristian*, the defendant was charged with conspiracy to commit the murder of five named individuals. (*McChristian*, 18 Ill. App. 3d at 89.) The defendant was also separately charged with attempted murder of each individual. The jury returned a verdict of not guilty on the attempt charges but guilty on the conspiracy charge. (18 Ill. App. 3d at 89.) On review, the appellate court reversed the finding of guilty on the conspiracy charge. In so doing, the court noted that the verdicts of the jury were logically inconsistent. (18 Ill. App. 3d at 92.) The court found that the jury's verdicts on the attempted murders tended to negate the overt act of shooting, which by its verdicts of acquittal the jury must have found the defendant did not commit with intent to murder. (18 Ill. App. 3d at 92-93.) The court therefore reversed the conspiracy conviction.

In *Trinkle*, the court found that the indictment for attempted murder was insufficient because it did not contain the specific intent element. (*Trinkle*, 40 Ill. App. 3d at 734.) The court also questioned the sufficiency of the evidence, noting that the defendant fired at the door of a building (a bar) not knowing that a patron was standing behind it. The court also noted that previous statements by the defendant evinced an intent against property not against a person. 40 Ill. App. 3d at 734.

We find that the above cases are all distinguishable from the

issue in the present case. Those cases dealt with the sufficiency of evidence to prove the crime charged. In the instant case, the issue before us is whether the subsequent crime was sufficiently relevant to be admitted into evidence. The decision of the trial court in this regard will not be overturned absent a clear abuse of discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 455-56; *People v. Jurczak* (1986), 147 Ill. App. 3d 206, 214.) The evidence indicates that defendant shot at Jones' house at a time when it could reasonably be expected that Jones was home. Thus, at the very least, evidence of the subsequent shooting showed malice toward Jones which could be probative of defendant's intent at the time of the shooting which was charged. (See *People v. Manzella* (1973), 56 Ill. 2d 187, 197 (evidence of other crimes went to the issues of malice and criminal intent).) Consequently, we find that the trial court did not abuse its discretion.

Finally, we address defendant's contention that the closing argument by the State deprived him of a fair trial. Defendant contends that he was prejudiced in that the State argued facts which were not in evidence in that the State claimed that innocent people, maybe children, were jeopardized, that there was good lighting, and that Dainty denied using cocaine; that the State made emotional appeals, asking the jury to put itself in the place of Jones; that the State disparaged the State's burden of proof when it told the jury not to give defendant a "free pass" just because the State had the burden of proof; that the State vouched for the credibility of witnesses in that it stated that Dainty entered into a plea agreement to get at the truth and that Jefferson was not charged with the offense, the result of which was also to insinuate that since defendant was charged he was guilty; and that the State argued that defendant's admission of a prior burglary was disingenuous.

The State responds that all but three of these arguments have been waived. We agree. In order to preserve an issue on appeal the issue must have been raised at trial and in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) In the instant case, defendant did not object to the State's argument that Dainty's plea agreement was an effort to get at the truth; that Jefferson was not charged and that he was therefore believable; that Dainty denied trying to buy cocaine from Michael Jones; or to the argument that defendant's admission of his prior burglary conviction was disingenuous. We therefore consider these issues waived. We also find that defendant waived his argument that the State improperly argued that the jury should put itself in Jones' place. Although there was an objection to this argument, the basis for the objection was different at

trial than the one now asserted on appeal. The purpose of requiring an objection at trial is to allow the trial court to correct errors as they occur. (See *People v. Jackson* (1981), 84 Ill. 2d 350, 359.) Counsel is therefore required to inform the court of the basis for objections. Thus, when an objection is not specified, it is waived. (*People v. Cowper* (1986), 145 Ill. App. 3d 1074, 1083-84.) Since the basis now being argued was not raised at trial, we consider it waived. We will now consider defendant's remaining contentions.

Defendant claims that he was prejudiced when the State argued that innocent people, maybe children, were jeopardized, and that there was good lighting. Defendant contends that neither of these arguments was supported by the record.

▮▮ We agree that it is improper to argue facts which are not in the record. (See *People v. White* (1985), 134 Ill. App. 3d 262, 280.) However, we find that neither of the State's arguments violated this rule. In beginning its argument, the State said:

"There are two ways, at least two ways in which a jury can approach an analysis of this case. A jury could think or say, for example, that the people involved in this shooting are not choir boys—not even the victim—and that this doesn't really concern or affect us very much, because bullets don't fly around our neighborhoods like this. That nobody got hurt, and so all things considered, the case is not really that important to us, so let's refer to a judgment of not guilty and be gone.

On the other hand, a jury could approach its deliberations in this frame of mind, this is a serious incident, *innocent people, maybe children, were jeopardized* who lived near Tay and Preston—." (Emphasis added.)

The evidence in the instant case showed that the shooting occurred in a residential neighborhood at approximately 8:30 at night. It could thus be inferred that "innocent people, maybe children," could have been jeopardized by the shooting. We therefore find that there was evidence in the record upon which the State's argument was based.

With regard to the lighting, the State argued:

"The equalizer light was on to provide some light in that car. It provided some light in that car to assist in an identification. And to confirm these shots, in my judgment. That wasn't the only light in that area. There is a street light. If you look, for example, in People's Exhibit No. 5, there is a street light over the intersection, on the northwest corner of the intersection."

We find that this was proper argument since the exhibit referred

to by the State did in fact show a streetlight.

Finally, defendant contends that the State denigrated its burden of proof. We disagree. The argument to which defendant refers is as follows:

> "One of the very last things Mr. Wilt said to you in his closing argument is this, something to the effect of, if you believe the defense witnesses, the defendant and Dean Bell, then of course you would find the defendant not guilty. And he said then, on the other hand, if you disbelieve the defense witnesses, it doesn't necessarily mean you find him guilty, you still have to believe the State's witnesses before you can find him guilty.
>
> As you think about that, think about what he is arguing to you in here, and that is, this free pass theory or rationale I talked about in my opening argument.
>
> The burden is the State's. And it is. And if you don't believe the defense witnesses, don't think about it, just kind of shove it out of your mind, they have the burden, because we are not going to think about it, we don't believe the defendant or his witnesses, it doesn't enter into the equation. Don't buy that free pass argument."

We do not find this argument altered the State's burden of proof, especially when taken in context with the rest of the State's argument. The State recognized both that it had the burden of proof and that that burden was beyond a reasonable doubt. Moreover, the statement complained of appears to do no more than direct the jury that it should consider defendant's testimony along with all other testimony.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

UNVERZAGT, P.J., and DUNN, J., concur.