**Deirdre J. CURRAN, Appellant, (Plaintiff),**

v.

**Gregory J. PASEK, Personal Representative of the Estate of Harry Patrick McDonald, M.D., Appellee (Defendant).**

No. 93–267.

Supreme Court of Wyoming.

Dec. 8, 1994.

---

Michael D. Zwickl of Beech Street Law Office, Casper, for appellant.

Robert M. Shively of Murane & Bostwick, Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

TAYLOR, Justice.

The certified questions before this court require us to test the application of the confidential marital communication privilege which prevents one spouse from testifying against the other. A doctor committed suicide and marijuana was found on his body. During the investigation of the suicide, a deputy sheriff questioned the doctor's widow and she indicated that her late husband was a frequent user of marijuana.

Appellant filed a malpractice action in the United States District Court for the District of Wyoming against the doctor's estate and subpoenaed the doctor's wife for a deposition. The doctor's personal representative moved to quash the subpoena asserting the privilege of confidential marital communications. A United States Magistrate for the District of Wyoming denied the motion. The personal representative appealed the ruling to the United States District Court for the District of Wyoming, and three questions of law were certified to this court.

## I. CERTIFIED QUESTIONS

The three questions certified by the United States District Court for the District of Wyoming are:

(1) Is it the law of the state of Wyoming that the privilege protecting confidential marital communications between spouses survives the death of either spouse?

(2) If the answer to the preceding question is in the affirmative, then which spouse holds the privilege?

(3) If the answer to question (1) is in the affirmative, then may the privilege be waived, and if so, by whom?

## II. FACTS

These certified questions arise out of a medical malpractice action filed by appellant, Deirdre J. Curran (Curran), against the estate of Dr. Harry McDonald, M.D., in the United States District Court for the District of Wyoming on December 21, 1992. Appellee, Gregory J. Pasek, is the personal representative of Dr. McDonald's estate.

Curran was injured in a one car accident on July 5, 1991. She was hospitalized in Gillette, Wyoming, with extensive lacerations to her arms and legs. In her complaint, she alleges that Dr. McDonald committed malpractice on July 19, 1991.

Dr. McDonald committed suicide on July 23, 1992. Dr. McDonald's suicide was investigated by a Campbell County, Wyoming deputy sheriff. The deputy sheriff spoke to Dr. McDonald's wife, Julia Norton (Norton), the evening of the suicide. Norton told the deputy sheriff that Dr. McDonald was a frequent user of marijuana who "used marijuana on a daily basis except for the days he was on call." Curran subpoenaed Norton and sought to take her deposition. Curran wishes to introduce Norton's statements at trial as evidence of Dr. McDonald's negligence.

The personal representative filed a motion to quash the subpoena. A United States Magistrate for the District of Wyoming denied the motion. The personal representative appealed that ruling to the United States

---

* Retired July 6, 1994.

** Chief Justice at time of oral argument.

District Court for the District of Wyoming. Three questions of law were certified to this court.

## III. DISCUSSION

The Wyoming legislature has codified both the confidential marital communication privilege and the privilege of spousal immunity. Wyo.Stat. § 1–12–104 (1988) provides:

No husband or wife shall be a witness against the other except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceeding by one against the other. They may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist.

■ Clarity and consistency demand that we distinguish between the confidential marital communication privilege and the privilege of spousal immunity. The privilege of spousal immunity may be invoked by the spouse who does not wish to be the instrumentality of condemnation directed at his or her partner. *Engberg v. Meyer*, 820 P.2d 70, 83 (Wyo.1991). The confidential marital communication privilege is the privilege that ensures that private marital communications will remain private. *Jackson v. State*, 603 So.2d 670, 671 (Fla.App.1992).

The confidential marital communication privilege is a privilege that was established at common law sometime after 1850. 8 Wigmore, *Evidence* § 2333 at 644 (McNaughton rev. 1961). Wyo.Stat. § 1–12–104 is a codification of a common law privilege and we look to the common law history of the privilege in determining its purpose.

■ A privilege is a limitation on a court's ability to compel testimony regarding confidential communications that occur in certain relationships. 8 Wigmore, *supra*, § 2285 at 527. Wigmore identifies four primary characteristics of a privileged communication. *Id.* According to Wigmore, for a statement to qualify as a privileged communication, it must originate in confidence; confidence must be essential to the continued vitality of the relationship; the relationship must be one society is prepared to recognize; and any injury to the relationship caused by the reve-

lation of the confidential communication must be greater than any benefit that results from revealing the confidential communication. *Id.*

Confidential marital communications satisfy these criteria and are, therefore, considered privileged. 8 Wigmore, *supra*, § 2332 at 642. We believe that at least one positive effect of the confidential marital communication privilege is that it enhances the quality of marital relationships by encouraging confidential communication between spouses. To fully understand the application of the confidential marital communication privilege, one must know what constitutes a confidential marital communication.

■ Whether a particular statement is a privileged confidential marital communication depends on the nature and character of the communication as well as the circumstances surrounding the utterance. *Hunter v. Hunter*, 169 Pa.Super. 498, 83 A.2d 401, 403 (1951). The communication must be delivered during marriage and in confidence. *State v. Wright*, 154 Vt. 512, 581 A.2d 720, 728–29 (1989), *cert. denied*, 498 U.S. 1032, 111 S.Ct. 692, 112 L.Ed.2d 682 (1991) (interpreting Vermont Rule of Evidence 504). *See also*, *Shepherd v. State*, 257 Ind. 229, 277 N.E.2d 165, 166 (1971) and *People v. DeWitt*, 173 Mich.App. 261, 433 N.W.2d 325, 327 (1988). The privilege does not attach when the confidentiality of the communication is destroyed by revealing it in the presence of a third party. *Chamberlain v. State*, 348 P.2d 280, 286 (Wyo.1960). *See also*, 8 Wigmore, *supra*, § 2336 at 650–51.

■ It is generally accepted that the confidential marital communication privilege extends to communications and not to acts that are in no way communicative. 8 Wigmore, *supra*, § 2337 at 657. Courts are divided on the question of how to determine whether conduct is communicative. This question is an issue of first impression before this court.

Courts apply one of two tests in determining whether certain conduct qualifies as a confidential marital communication. We refer to the tests as the "expectation test" and the "intentions test." Courts that apply the "expectation test" ask whether the conduct

was undertaken in reliance on the confidences of the marital relationship, i.e., whether there was an expectation of confidentiality; and, if there was, the conduct is deemed a confidential marital communication. *See,* e.g., *People v. Daghita,* 299 N.Y. 194, 199, 86 N.E.2d 172, 174 (1949); *Menefee v. Commonwealth,* 189 Va. 900, 55 S.E.2d 9, 15 (1949); and *State v. Robinson,* 180 W.Va. 400, 376 S.E.2d 606, 610 (1988).

The courts that apply the "intentions test" ask whether the conduct was intended to communicate a confidential message to the other spouse; only conduct intended to convey a confidential message qualifies as a confidential marital communication under this test. *See,* e.g., *People v. Simpson,* 39 Ill.App.3d 661, 669, 350 N.E.2d 517, 524 (1976), *rev'd on other grounds,* 68 Ill.2d 276, 12 Ill.Dec. 234, 369 N.E.2d 1248 (1977); *State v. Newman,* 235 Kan. 29, 680 P.2d 257, 266 (1984); *State v. Hannuksela,* 452 N.W.2d 668, 676 (Minn.1990); and *State v. Hart,* 391 N.W.2d 677, 679 (S.D.1986). The federal courts apply the "intentions test." *See,* e.g., *United States v. Estes,* 793 F.2d 465, 467 (2nd Cir.1986); *United States v. Robinson,* 763 F.2d 778, 783 (6th Cir.1985); and *United States v. Smith,* 533 F.2d 1077, 1079 (8th Cir.1976).

We find the rationale underlying the "intentions test" persuasive and adopt it as the rule in Wyoming. This test treats assertive conduct that is intended to communicate a confidential message from one spouse to another as a confidential marital communication. *Hannuksela,* 452 N.W.2d at 676. Conduct that is undertaken in reliance on the confidence of the marital relationship, i.e., with an expectation of confidentiality, is not necessarily considered a confidential marital communication. *Id.* The "intentions test" is a flexible analytical tool that allows a court to avoid erecting barriers to the truth while still protecting conduct that is intended to convey confidential messages between spouses.

Marriage was fostered at common law by promoting confidential communication between spouses. 8 Wigmore, *supra,* § 2285 at 527. Confidentiality was considered an essential element in the marital relationship and was encouraged by the confidential marital communications privilege. *Id.* Modern courts continue to recognize the strong public policy factors that support the privilege. *Jackson,* 603 So.2d at 671.

■ We hold that the primary purpose of the confidential marital communication privilege is to foster marital relationships by encouraging confidential communication between spouses and that this is the primary purpose the Wyoming legislature intended to further when it enacted Wyo.Stat. § 1–12–104.

We now turn to the first of the three questions certified to this court. The United States District Court for the District of Wyoming asks:

Is it the law of the state of Wyoming that the privilege protecting confidential marital communications between spouses survives the death of either spouse?

■ We begin by noting that during oral argument, both parties conceded that the confidential marital communication privilege survives the death of either spouse. *Fox v. Fox,* 75 Wyo. 390, 403, 296 P.2d 252, 256 (1956) stated that "[c]onfidential communications between spouses should be protected after the death of either one of the spouses * * *." We find this statement and the rationale behind it persuasive. Confidential marital communications are encouraged when the confidentiality of those communications is protected. 8 Wigmore, *supra,* § 2341 at 673.

The confidential marital communication privilege must extend beyond the death of either spouse or the guarantee of confidentiality is destroyed. *Id.* We hold that the confidential marital communications privilege survives the death of either spouse. To rule otherwise would thwart the very purpose of the confidential marital communication privilege.

■ The second question certified by the United States District Court for the District of Wyoming asks:

If the answer to the preceding question is in the affirmative, then which spouse holds the privilege?

In analyzing the privilege for anti-marital facts, referred to in *Engberg*, 820 P.2d at 83, as the privilege of spousal immunity, Wigmore stated, "the privilege seems to be *equally* that of *party* and of *witness.*" 8 Wigmore, *supra*, § 2241 at 254 (emphasis in original). In *Engberg*, we were interpreting Wyo.Stat. § 1–12–104, the same statute involved in this case. *Engberg*, 820 P.2d at 82.

In *Engberg*, after analyzing the express language of the statute, we concluded that the legislature intended to make the spousal immunity privilege available to both the witness spouse and the party spouse. *Id.* at 83. We hold that the legislature codified the confidential marital communication privilege in Wyo.Stat. § 1–12–104 and intended to make the confidential marital communication privilege available to either spouse.

 The third question certified by the United States District Court for the District of Wyoming asks:

> If the answer to question (1) is in the affirmative, then may the privilege be waived, and if so, by whom?

 The confidential marital communication privilege initially belongs to the spouse who communicates the confidential information. *Fraser v. United States*, 145 F.2d 139, 144 (6th Cir.1944), *cert. denied*, 324 U.S. 849, 65 S.Ct. 684, 89 L.Ed. 1409 (1945). The spouse against whom the testimony is offered has the right to invoke the confidential marital communication privilege. *Stein v. Superior Court of City and County of San Francisco*, 174 Cal.App.2d 21, 344 P.2d 406, 407 (1959); *Prink v. Rockefeller Center, Inc.*, 48 N.Y.2d 309, 422 N.Y.S.2d 911, 398 N.E.2d 517, 520 (1979); *People v. McCormack*, 278 A.D. 191, 104 N.Y.S.2d 139, 143 (1951), *aff'd*, 303 N.Y. 782, 103 N.E.2d 895 (1952).

 If the party spouse refuses to waive the confidential marital communication privilege, the witness spouse cannot testify even if he or she waives the spousal immunity privilege. *State v. Hastings*, 466 N.W.2d 697, 699 (Iowa App.1990). Only the party spouse can waive the confidential marital communication privilege with respect to information communicated in confidence to the other spouse. *United States v. Lilley*, 581 F.2d 182, 188–89 (8th Cir.1978).

 The party spouse may voluntarily waive the confidential marital communication privilege. 8 Wigmore, *supra*, § 2340 at 671. To waive the confidential marital communication privilege, the party spouse must, in some way, destroy the confidentiality of the communication. *Chamberlain*, 348 P.2d at 286 (information revealed to third party; privilege waived); *White v. State*, 268 P.2d 310, 313–14 (Okl.Cr.App.1954) (defendant testified on direct examination regarding a letter he wrote to his wife then objected to the admission of the letter as confidential marital communication; privilege waived); *Allen v. State*, 35 Okla.Crim. 64, 248 P. 655, 656 (1926) (husband testified on direct examination as to confidential marital communications; privilege waived); *State v. Cox*, 106 Utah 253, 147 P.2d 858, 859 (1944) (failure to object on grounds that former wife's testimony constituted confidential marital communication; privilege waived). The confidentiality cannot be destroyed by the witness spouse's testimony regarding the confidential communication. *Hastings*, 466 N.W.2d at 699.

We hold that the spouse against whom confidential marital communications are offered must waive the confidential marital communication privilege before the witness spouse can testify regarding those confidential marital communications. We also hold that once the party spouse has waived the confidential marital communication privilege, the non-party spouse may then elect to invoke or waive the privilege of spousal immunity.

## IV. CONCLUSION

In response to the certified questions submitted, we hold that the privilege of confidential marital communications survives the death of either spouse; that the confidential marital communication privilege is available to both spouses; and that the confidential

marital communication privilege must first be waived by the party spouse against whom the privileged communication will be used and that the non-party spouse may then elect to assert or waive the privilege of spousal immunity.